ORIGINAL

FILED
JUL 15 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JEAN MATHIA, Individually and as Personal Representative of the ESTATE OF DOYLE V. MATHIA, deceased, Plaintiff, | |
| v. | No. 08-513 T |
| UNITED STATES of AMERICA, Defendant. | |

**COMPLAINT**

1. Plaintiff, Jean Mathia, individually and as personal representative of the Estate of Doyle V. Mathia, deceased, brings this action to recover from the United States of America, Defendant herein, the sum of $155,706, or such greater amount as the Court should determine to be lawfully due, together with interest thereon according to law.

2. This suit and the causes of action herein set forth arise under Acts of Congress, and regulations thereunder of the Treasury Department, providing for internal revenue. This suit is brought pursuant to and within the period prescribed by such Acts and regulations, for the recovery of internal revenue taxes erroneously or illegally assessed or collected or of sums wrongfully collected under the internal revenue laws, together with interest thereon according to law. This Court's jurisdiction is founded upon 28 U.S.C. §1491 and 26 U.S.C. §7422.

3. Plaintiff files this action in both her individual capacity and as a fiduciary, as the Personal Representative of the estate of her deceased husband, Doyle V. Mathia ("Mr. Mathia"), who died on February 19, 2000 (Mr. and Ms. Mathia are collectively referred to as "the Mathias").

4. Plaintiff is the duly appointed Personal Representative of the Estate of Doyle V. Mathia, deceased. Plaintiff was appointed as the Personal Representative of the Estate of Doyle V. Mathia, deceased, on October 8, 2003, by the District Court in and for Delaware County, State of Oklahoma, Case No. PB-2003-119 (the "Estate").

5. Plaintiff's current mailing address is P.O. Box 450417, Grove, OK 74345-0417, and Plaintiff's current legal address is 61991 East 315 Road, Grove, OK 74344.

6. Plaintiff has made no transfer or assignment of the claims herein presented or any part thereof and has at all times been the sole and absolute owner of such claims.

7. No action on these claims by Plaintiff, or any assignee, has been taken before the Congress of the United States or before any of the departments or agencies of the United States, other than the action before the Treasury Department as hereinafter described.

8. No other suit or process by Plaintiff, or any assignee, is pending on such claims in any other court, other than the actions before the United States Tax Court as hereinafter described.

9. For each of the three years at issue herein, the Mathias kept their books and records and filed their federal income tax returns on the cash basis of accounting, using a calendar year ending December 31 as their accounting period.

10. For each of the three years at issue herein, the Mathias filed joint federal income tax returns, and the names and employer identification numbers of the taxpayers appearing on the tax returns for each of the three years at issue herein are: Doyle Mathia (or Doyle V. Mathia), Social Security Number: 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, and Jean Mathia, Social Security Number: 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.

11. For calendar year 1982, the Mathias filed their joint federal income tax return with an address of 206 E. Proctor St., Carson City, NV 89701. For calendar year 1983, the Mathias filed their joint federal income tax return with an address of 880 So. Stewart, Suite B, Carson City, NV 89701. For calendar year 1983, the Mathias filed their amended joint federal income tax return with an address of 377 South Nevada Street, Carson City, Nevada 89701. For calendar year 1984, the Mathias filed their joint federal income tax return with an address of 377 South Nevada Street, Carson City, Nevada 89701.

12. For each of the three years at issue herein, Plaintiff filed claims for refund for herself and the Estate, and the names, employer identification numbers, and address of the taxpayers appearing on the claims for refund for each of the three years at issue herein are: Doyle V. Mathia (deceased 2/19/00), Social Security Number: 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, Jean Mathia, Personal Representative, Filing as Surviving Spouse, and Jean Mathia, Social Security Number: 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, P. O. Box 450417, Grove, Oklahoma 74345-0417.

**First Claim for Relief: Tax Refund (1982)**

13. Plaintiff adopts and incorporates the allegations set forth in paragraphs 1 through 12 above as if they were fully set forth herein.

14. The Mathias filed their joint federal income tax return for calendar year 1982 with the Internal Revenue Center in Ogden, Utah, on or before April 15, 1983.

15. On January 27, 2003, the Internal Revenue Service assessed additional tax for calendar year 1982 in the amount of $149,360, relating to Mr. Mathia's investment in Greenwich Associates, a New York limited partnership, FEIN: 13-3141085 (hereinafter, "Greenwich Associates").

16. This tax was erroneously assessed after the period of limitations for assessment provided for in the Internal Revenue Code had expired for the reasons provided in the amended return and claim for refund attached hereto as Exhibit "A" and incorporated herein by reference.

17. On October 27, 2003, Plaintiff sent a check payable to "Internal Revenue Service" in the amount of $149,360 to Internal Revenue Service, Department of the Treasury, Ms. Sheryl Waldron, 1973 North Rulon White Blvd., Ogden, Utah 84201.

18. On October 26, 2005, Plaintiff timely filed with the Internal Revenue Center in Austin, Texas, an amended income tax return for calendar year 1982 and a claim for refund on the basis that the sum of $149,360 was erroneously paid to and collected by the Internal Revenue Service. A copy of the cover letter accompanying the amended return and claim for refund is attached hereto as Exhibit "B" and incorporated herein by reference, and a copy of the amended return and claim for refund is attached hereto as Exhibit "A" and incorporated herein by reference.

19. By letter to Plaintiff, dated July 17, 2006, an employee of the Internal Revenue Service stated, in part, that "your request will not be considered". This letter may or may not constitute a disallowance of Plaintiff's October 26, 2005 claim for refund for calendar year 1982. A copy of this letter is attached hereto as Exhibit "C" and incorporated herein by reference, and, for the convenience of the Court, a retyped copy of the body of the letter, prepared by Plaintiff, is attached hereto as Exhibit "D" and incorporated herein by reference.

20. As a result of Defendant's erroneous actions as set forth above, the Plaintiff overpaid United States income tax for calendar year 1982 in the amount of $149,360, which amount, together with interest as provided by law, is due and owing to Plaintiff from Defendant.

21. The provisions of the Internal Revenue Code and accompanying Treasury Regulations upon which this claim is founded are described in the amended return and claim for refund, which is attached hereto as Exhibit "A" and incorporated herein by reference.

22. The settlement agreements upon which this litigation is based are described and/or attached to the amended return and claim for refund, which is attached hereto as Exhibit "A" and incorporated herein by reference.

**Second Claim for Relief: Tax Refund (1983)**

23. Plaintiff adopts and incorporates the allegations set forth in paragraphs 1 through 22 above as if they were fully set forth herein.

24. The Mathias filed their joint federal income tax return for calendar year 1983 with the Internal Revenue Center in Ogden, Utah, on or before August 21, 1984.

25. The Mathias filed a joint amended federal income tax return for calendar year 1983 with the Internal Revenue Center in Ogden, Utah, on or before June 2, 1986.

26. On January 27, 2003, the Internal Revenue Service assessed additional tax for calendar year 1983 in the amount of $4,015, relating to Mr. Mathia's investment in Greenwich Associates.

27. This tax was erroneously assessed after the period of limitations for assessment provided for in the Internal Revenue Code had expired for the reasons provided in the amended return and claim for refund attached hereto as Exhibit "E" and incorporated herein by reference.

28. On October 27, 2003, Plaintiff sent a check payable to "Internal Revenue Service" in the amount of $4,015 to Internal Revenue Service, Department of the Treasury, Ms. Sheryl Waldron, 1973 North Rulon White Blvd., Ogden, Utah 84201.

29. On October 26, 2005, Plaintiff timely filed with the Internal Revenue Center in Austin, Texas, an amended income tax return for calendar year 1983 and a claim for refund on the basis that the sum of $4,015 was erroneously paid to and collected by the Internal Revenue Service. A copy of the cover letter accompanying the amended return and claim for refund is attached hereto as Exhibit "B" and incorporated herein by reference, and a copy of the amended return and claim for refund is attached hereto as Exhibit "E" and incorporated herein by reference.

30. By letter to Plaintiff dated July 17, 2006, an employee of the Internal Revenue Service stated, in part, that "your request will not be considered". This letter may or may not constitute a disallowance of Plaintiff's October 26, 2005 claim for refund for calendar year 1983. A copy of this letter is attached hereto as Exhibit "C" and incorporated herein by reference, and, for the convenience of the Court, a retyped copy of the body of the letter, prepared by Plaintiff, is attached hereto as Exhibit "D" and incorporated herein by reference.

31. As a result of Defendant's erroneous actions as set forth above, Plaintiff overpaid United States income tax for calendar year 1983 in the amount of $4,015, which amount, together with interest as provided by law, is due and owing to Plaintiff from Defendant.

32. The provisions of the Internal Revenue Code and accompanying Treasury Regulations upon which this claim is founded are described in the amended return and claim for refund, which is attached hereto as Exhibit "E" and incorporated herein by reference.

33. The settlement agreements upon which this litigation is based are described and/or attached to the amended return and claim for refund, which is attached hereto as Exhibit "E" and incorporated herein by reference.

**Third Claim for Relief: Tax Refund (1984)**

34. Plaintiff adopts and incorporates the allegations set forth in paragraphs 1 through 33 above as if they were fully set forth herein.

35. The Mathias filed their joint federal income tax return for calendar year 1984 with the Internal Revenue Center in Fresno, California, on or before January 15, 1987.

36. On January 27, 2003, the Internal Revenue Service assessed additional tax for calendar year 1984 in the amount of $2,331, relating to Mr. Mathia's investment in Greenwich Associates.

37. This tax was erroneously assessed after the period of limitations for assessment provided for in the Internal Revenue Code had expired for the reasons provided in the amended return and claim for refund attached hereto as Exhibit "F" and incorporated herein by reference.

38. On October 27, 2003, Plaintiff sent a check payable to "Internal Revenue Service" in the amount of $2,331 to the Internal Revenue Service, Department of the Treasury, Ms. Sheryl Waldron, 1973 North Rulon White Blvd., Ogden, Utah 84201.

39. On October 26, 2005, Plaintiff timely filed with the Internal Revenue Center in Austin, Texas, an amended income tax return for calendar year 1984 and a claim for refund on the basis that the sum of $2,331 was erroneously paid to and collected by the Internal Revenue Service. A copy of the cover letter accompanying the amended return and claim for refund is attached hereto as Exhibit "B" and incorporated herein by reference, and a copy of the amended return and claim for refund is attached hereto as Exhibit "F" and incorporated herein by reference.

40. By letter to Plaintiff dated July 17, 2006, an employee of the Internal Revenue Service stated, in part, that "your request will not be considered". This letter may or may not

constitute a disallowance of Plaintiff's October 26, 2005 claim for refund for calendar year 1984. A copy of this letter is attached hereto as Exhibit "C" and incorporated herein by reference, and, for the convenience of the Court, a retyped copy of the body of the letter, prepared by Plaintiff, is attached hereto as Exhibit "D" and incorporated herein by reference.

41. As a result of Defendant's erroneous actions as set forth above, Plaintiff overpaid United States income tax for calendar year 1984 in the amount of $2,331, which amount, together with interest as provided by law, is due and owing to Plaintiff from Defendant.

42. The provisions of the Internal Revenue Code and accompanying Treasury Regulations upon which this claim is founded are described in the amended return and claim for refund, which is attached hereto as Exhibit "F" and incorporated herein by reference.

43. The settlement agreements upon which this litigation is based are described and/or attached to the amended return and claim for refund, which is attached hereto as Exhibit "F" and incorporated herein by reference.

**Pending United States Tax Court Cases**

44. Plaintiff adopts and incorporates the allegations set forth in paragraphs 1 through 43 above as if they were fully set forth herein.

45. Plaintiff received a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330" for tax years 1982, 1983 and 1984, dated August 5, 2005, issued by the Internal Revenue Service Appeals Office at Oklahoma City, Oklahoma (the "First Notice").

46. Plaintiff received a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6320" for tax years 1983 and 1984, dated August 5, 2005, issued by

the Internal Revenue Service Appeals Office at Oklahoma City, Oklahoma (the "Second Notice").

47. Plaintiff received a "Full Disallowance – Final Determination", for tax years 1982, 1983 and 1984, dated August 18, 2005, issued by the Internal Revenue Service Appeals Office at Oklahoma City, Oklahoma, concerning Plaintiff's application for interest abatement pursuant to 26 U.S.C. § 6404.

48. Plaintiff received a Decision dated August 9, 2006, issued by the Office of the Internal Revenue Service at Oklahoma City, Oklahoma, concerning Plaintiff's application for reasonable administrative costs pursuant to 26 U.S.C. § 7430 (the "Administrative Costs Decision").

49. In response to the First Notice, the Second Notice and the Full Disallowance – Final Determination, Plaintiff filed a Petition with the United States Tax Court. *See* *Jean Mathia, and Estate of Doyle V. Mathia, Deceased, Jean Mathia, Personal Representative, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 16483-05L (hereinafter, "Mathia I").

50. On January 26, 2006, Plaintiff filed a Motion to Stay the Tax Court proceedings in Mathia I to allow Plaintiff's October 26, 2005 claims for refund for the three years at issue to be processed and to allow Plaintiff to exhaust her administrative remedies.

51. On March 6, 2006, the Tax Court denied Plaintiff's Motion to Stay, stating that the Tax Court would be able to rule on whether Plaintiff made overpayments of tax and obtaining a statement on the record from counsel for the Commissioner of Internal Revenue that, if Plaintiff prevailed in the Tax Court litigation, the Commissioner would refund the tax.

52. Following the denial of Plaintiff's Motion to Stay on March 6, 2006, the Tax Court case was submitted for decision pursuant to Tax Court Rule 122, which decision is currently pending.

53. In response to the Administrative Costs Decision, Plaintiff filed a Petition with the United States Tax Court. *See* Jean Mathia, individually, Petitioner, v. Commissioner of Internal Revenue, *Respondent,* Docket No. 22854-06 (hereinafter, "Mathia II").

54. On September 12, 2007, the parties filed a Joint Motion for Continuance of Trial in Mathia II, in order to first allow the resolution of Mathia I, and on September 14, 2007, the Tax Court issued an Order that Mathia II be continued.

55. This case may proceed under 26 U.S.C. §6512(a) because:

A. On information and belief, neither the Secretary of the Treasury nor his delegate have mailed a notice of deficiency to Plaintiff under 26 U.S.C. §6212(a), *see* 26 U.S.C. §6512(a); and/or

B. This case involves an amount collected after the period of limitation upon the making of levy or beginning a proceeding in court for collection has expired, and the Tax Court has not ruled as to whether such period has expired, *see* 26 U.S.C. §6512(a)(3).

56. Plaintiff files this action with the Court to protect her right to a refund.

57. Plaintiff files this action as a protective measure. This case should be stayed pending a ruling by the Tax Court.

WHEREFORE, Plaintiff prays as follows:

1. That the Court enter judgment for Plaintiff in the amount of $155,706, or such greater amount as the Court should determine, plus interest thereon;

2. That Plaintiff be awarded her costs and attorneys' fees herein; and

3. That the Court grant such other and further legal or equitable relief to which Plaintiff is entitled.

DATED this 14th day of July, 2008.

Respectfully submitted,

Mark W. Curnutte, OBA # 2113
LOGAN & LOWRY, LLP
101 South Wilson Street
P. O. Box 558
Vinita, OK 74301
Telephone: (918) 256-7511
Facsimile: (918) 256-3187

ATTORNEY FOR PLAINTIFFS

**EXHIBIT LIST**

Form 1040X, Amended U.S. Individual Income Tax Return,
for calendar year 1982 .......... A

Letter dated October 26, 2005, transmitting Forms 1040X
for 1982, 1983 and 1984 .......... B

Letter dated July 17, 2006 from Internal Revenue Service .......... C

Retyped body of letter dated July 17, 2006 from Internal Revenue Service .......... D

Form 1040X, Amended U.S. Individual Income Tax Return,
for calendar year 1983 .......... E

Form 1040X, Amended U.S. Individual Income Tax Return,
for calendar year 1984 .......... F

Form **1040X** (Rev. November 2003)

Department of the Treasury - Internal Revenue Service

# Amended U.S. Individual Income Tax Return

▶See separate instructions.

OMB No. 1545-0091

This return is for calendar year ▶ 1982 , or fiscal year ended ▶

Please print or type

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| Doyle V. | Mathia (deceased 2/19/00) | 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 |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| Jean | Mathia | 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 |
| Home address (no. and street) or P.O. box if mail is not delivered to your home: P.O. Box 450417 | Apt. no. | Phone number: (918) 786-7849 |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions: Grove, Oklahoma 74345-0417 | | For Paperwork Reduction Act Notice, see page 6. |

A If the name or address shown above is different from that shown on the original return, check here ▶ [X]

B Has the original return been changed or audited by the IRS or have you been notified that it will be? [X] Yes [ ] No

C Filing status. Be sure to complete this line. Note. You cannot change from joint to separate returns after the due date.

On original return ▶ [ ] Single [X] Married filing jointly [ ] Married filing separately [ ] Head of household [ ] Qualifying widow(er)

On this return ▶ [ ] Single [X] Married filing jointly [ ] Married filing separately [ ] Head of household* [ ] Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

| Use Part II on the back to explain any changes | | A. Original amount or as previously adjusted (see page 2) | B. Net change - amount of increase or (decrease) - explain in Part II | C. Correct amount |
|---|---|---|---|---|
| **Income and Deductions (see pages 2-6)** | | | | |
| 1 Adjusted gross income (see page 3) | 1 | 399,847 | | 399,847 |
| 2 Itemized deductions or standard deduction (see page 3) | 2 | 18,159 | | 18,159 |
| 3 Subtract line 2 from line 1 | 3 | 381,688 | | 381,688 |
| 4 Exemptions. If changing, fill in Parts I and II on the back | 4 | 5,000 | | 5,000 |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | 376,688 | | 376,688 |
| **Tax Liability** 6 Tax (see page 4). Method used in col. C IRS | 6 | 175,793 | -149,360 | 26,433 |
| 7 Credits (see page 4) | 7 | 25,157 | | 25,157 |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | 150,636 | -149,360 | 1,276 |
| 9 Other taxes (see page 4) | 9 | | | |
| 10 Total tax. Add lines 8 and 9 | 10 | 150,636 | -149,360 | 1,276 |
| **Payments** 11 Federal income tax withheld and excess social security and tier 1 RRTA tax withheld. If changing, see page 4 | 11 | 44,173 | | 44,173 |
| 12 Estimated tax payments, including amount applied from prior year's return | 12 | | | |
| 13 Earned income credit (EIC) | 13 | | | |
| 14 Additional child tax credit from Form 8812 | 14 | | | |
| 15 Credits from Form 2439, Form 4136, or Form 8885 | 15 | | | |
| 16 Amount paid with request for extension of time to file (see page 4) | 16 | | | |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | 149,360 |
| 18 Total payments. Add lines 11 through 17 in column C | 18 | | | 193,533 |

**Refund or Amount You Owe**

| | | |
|---|---|---|
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | 42,897 |
| 20 Subtract line 19 from line 18 (see page 5) | 20 | 150,636 |
| 21 **Amount you owe.** If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | |
| 22 If line 10, column C, is less than line 20, enter the difference | 22 | 149,360 |
| 23 Amount of line 22 you want **refunded to you** | 23 | 149,360 |
| 24 Amount of line 22 you want **applied to your** estimated tax | 24 | |

Acknowledgement of Receipt Only

RECEIVED OCT 28 2005 AUSTIN TEXAS IRS-AUSC

**Sign Here** Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

▶ Your signature: Jean Mathia (signature) Personal Representative — Date 10-05-05 ▶ Spouse's signature. If a joint return, both must sign: Jean Mathia (signature) Filing as Surviving Spouse — Date 10-05-05

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed [ ] | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.



EXHIBIT A

## Part I Exemptions. See Form 1040 or 1040A instructions.

If you are not changing your exemptions, do not complete this part.
If claiming more exemptions, complete lines 25-31.
If claiming fewer exemptions, complete lines 25-30.

| | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|
| 25 Yourself and spouse | 25 | | | |
| Caution. If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | | | | |
| 26 Your dependent children who lived with you | 26 | | | |
| 27 Your dependent children who did not live with you due to divorce or separation | 27 | | | |
| 28 Other dependents | 28 | | | |
| 29 Total number of exemptions. Add lines 25 through 28 | 29 | | | |
| 30 Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2003 | $3,050 | $104,625 |
| 2002 | 3,000 | 103,000 |
| 2001 | 2,900 | 99,725 |
| 2000 | 2,800 | 96,700 |

31 Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name | Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

No. of your children on line 31 who:
- lived with you ▶ ☐
- did not live with you due to divorce or separation (see page 5) ▶ ☐

Dependents on line 31 not entered above ▶ ☐

## Part II Explanation of Changes to Income, Deductions, and Credits

**Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.**

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here ▶ ☐

See Statement attached hereto and made a part hereof by reference.

## Part III Presidential Election Campaign Fund. Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here ▶ ☐



JSA
3A0190 2.000

Doyle V. Mathia (deceased 2/19/00)
& Jean Mathia
SSN: 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
Tax Year 1982

**STATEMENT ATTACHED TO AND MADE A PART OF FORM 1040X, "AMENDED U.S. INDIVIDUAL INCOME TAX RETURN" FOR TAX YEAR 1982**

**Part II (Relating to Line 6)**

For reasons discussed below, the tax in the amount of $149,360 paid by the taxpayers on or about October 27, 2003, relating to tax year 1982, is an "overpayment" that is properly refundable to the taxpayers.

**Facts**

This claim for tax refund is submitted on behalf of Doyle V. Mathia (deceased 2/19/2000) (SSN: 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) and Jean Mathia (SSN: 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) (collectively, the "Taxpayers") pursuant to Internal Revenue Code ("Code") §§ 6401(a) and 6402(a). Doyle V. Mathia, deceased, was a limited partner in Greenwich Associates, a New York limited partnership (the "Partnership") (FEIN 13-3141085). The Partnership was one of approximately 50 coal programs or partnerships sponsored by the Swanton Corporation, a Delaware corporation (collectively, the "Swanton Partnerships").

Jean Mathia is the surviving spouse of Doyle V. Mathia. Doyle and Jean Mathia's 1982, 1983 and 1984 joint income tax returns included items attributable to Mr. Mathia's Partnership interest.

The Partnership was subject to the Tax Equity & Fiscal Responsibility Act of 1982 ("TEFRA") provisions of Code §§ 6221-6233. The Partnership received a Notice of the Beginning of an Administrative Proceeding ("NBAP") on the following dates:

| Tax Year: | Date NBAP Received: |
|---|---|
| 1982 | Date unknown |
| 1983 | December 27, 1984 |
| 1984 | March 16, 1987 |

On June 11, 1985, the Partnership submitted a proposed settlement offer consistent with settlement guidelines proposed by the Internal Revenue Service (the "Service"). On July 8, 1985, Service personnel advised the Partnership of the suspension of settlement discussions due to conflicts in administration between the Service's Buffalo District and Kentucky District.

The Service issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for tax years 1982, 1983 and 1984 on August 3, 1990. On October 26, 1990, the Partnership filed a petition in Tax Court for readjustment of the FPAA in a case styled as *Greenwich Associates v. Commissioner*, Docket No. 024102-90, United States Tax Court.

The Service made at least two settlement offers in the case. The Service communicated a settlement offer to the Swanton Partnerships in or around November, 1990. See September 19, 1991 letter from Counsel for Greenwich Associates to All Members of the Swanton Partnerships' Tax Defense Fund (the "September 19, 1991 Letter") (copy attached as Exhibit A). This offer was not accepted by any of the Swanton Partnerships. The Service made at least one other offer, in September, 1991 (the "September 1991 Offer"), that was "essentially unchanged" from the earlier offer. See September 19, 1991 Letter, Exhibit A.

In the September 19, 1991 Letter, Counsel for Greenwich Associates recommended that all Swanton Partnerships accept the September 1991 Offer. By November, 1991, 19 of the 20 Swanton Partnerships, including Greenwich Associates, had accepted the September 1991 Offer. See November 8, 1991 letter from Counsel for Greenwich Associates to All Contributors to the Swanton Partnerships' Tax Defense Fund (copy attached as Exhibit B). The parties may have continued to work out the details of the settlement agreement until sometime in 1993.

On July 3, 1995, the Service provided documents to procedurally dismiss the Tax Court case to counsel for the Partnership. These documents included a document titled "STIPULATION OF SETTLEMENT BETWEEN THE TMP & RESPONDENT", which restated the terms of the agreement. The Partnership executed the documents and submitted them to the Internal Revenue Service District Counsel's office on July 17, 1996. Due to an error on the part of the Service, a revised "STIPULATION OF SETTLEMENT BETWEEN THE TMP & RESPONDENT" was issued by the Service on July 31, 1996 and again on September 6, 1996 (the "Stipulation of Settlement").

Upon receipt of the revised Stipulation of Settlement from the Service on September 6, 1996, the representative for the Partnership signed the Stipulation of Settlement and returned it to the Service on September 25, 1996. The Service countersigned the Stipulation of Settlement on August 30, 2001, almost 5 years later. The Stipulation of Settlement was filed with, and entered by, the Tax Court on August 31, 2001 (copy attached as Exhibit C).

The Service mailed a computational adjustment for tax year 1982 to the Taxpayers on January 8, 2003. A copy of the computational adjustment for tax year 1982 is attached hereto as Exhibit D. According to the Service's transcript for the Taxpayers, the Service assessed the tax in the amount of $149,360 on January 27, 2003.

On or about October 27, 2003, the Taxpayers paid all of the tax attributable to disallowed Partnership items reflected in the Taxpayers' 1982, 1983 and 1984 income tax returns as follows:

| Tax Year | Amount |
|---|---|
| 1982 | $149,360 |
| 1983 | 4,015 |
| 1984 | 2,331 |
| | $155,706 |

**Statute of Limitations**

Code § 6229(f) provides that, if an item becomes a non-partnership item by reason of Code § 6231(b), then the period for assessing any tax shall not expire before the date which is one year after the date on which the item became a non-partnership item. Code § 6231(b)(1)(C) provides that a partnership item becomes a non-partnership item as of the date the Secretary or the Attorney General enters into a settlement agreement with the partner with respect to such item.

As discussed above, an agreement was reached between the Greenwich Associates tax matters partner and the Service no later than November 1991 (the "1991 Settlement Agreement"). This agreement was a "settlement agreement" under Code § 6231(b)(1)(C), and, pursuant to Code § 6231(b)(1), no later than November 1991, the date the 1991 Settlement Agreement was reached, all Partnership items became non-partnership items. Accordingly, the Service had one year to assess the partners of the Partnership for the tax. The Service did not assess the tax until January 2003. This assessment was an assessment made out of time under Code § 6229(f).

Alternatively, even if the parties continued to work out the details of the 1991 Settlement Agreement until sometime in 1993, the settlement agreement would be considered final no later than 1993, and the assessment would still be untimely.

Alternatively, even if the 1991 Settlement Agreement is disregarded, on September 25, 1996, the TMP signed the Stipulation of Settlement and mailed it to the Service. On August 30, 2001, the Service signed this same Stipulation of Settlement, which was then filed with and entered by the Tax Court on August 31, 2001 (the "2001 Stipulation of Settlement Agreement").

The 2001 Stipulation of Settlement Agreement was also a "settlement agreement" under Code § 6231(b)(1)(C), and, pursuant to Code § 6231(b)(1), on August 30, 2001, the date the 2001 Stipulation of Settlement Agreement was signed, all Partnership items became non-partnership items. Accordingly, pursuant to Code § 6229(f), the statute of limitations for assessment would have expired one year from August 30, 2001, on August 30, 2002.

The Service did not assess the tax until January 2003. The period for assessing tax under Code § 6501, and any other provision of the Code, had also expired by this time. Therefore, under any view discussed above, the assessment was clearly an assessment made out of time.

Code § 6402 provides that, in the case of any "overpayment", the Secretary within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of a tax on the part of the person who made the overpayment and shall refund any balance to such person. Code § 6401(a) provides that the term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation.

**Conclusion**

The tax in the amount of $149,360 paid by the Taxpayers on or about October 27, 2003, relating to tax year 1982, is an "overpayment" that is properly refundable to the Taxpayers.

ZAPRUDER & ODELL
ATTORNEYS AT LAW
THE HOMER BUILDING
SUITE 800 SOUTH
601 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
TEL: (202) 508-9600 FAX: (202) 508-9601

September 19, 1991

ATTORNEY-CLIENT PRIVILEGED

To All Members of the Swanton Partnerships
Tax Defense Fund

Dear Clients:

We are writing to advise you that it is our view that you should accept the Government's settlement offer which was communicated to us this week. As you know, the trial of the 1982-84 partnerships is scheduled to commence on October 21, 1991 in Washington, making the timeframe for a decision on the offer quite short. In fact, the deadline for responding to your general partner is September 28, 1991.

The Government's offer is essentially unchanged from the offer made ten months ago. For each partnership other than Lincoln, the I.R.S. will allow a deduction equal to one-half of the amount of the cash investment. The negligence and substantial understatement penalties will be conceded by the I.R.S., but interest at the penalty rate will be applied. All additional deductions will be disallowed. The Lincoln offer is the same except that Lincoln partners will be entitled to a deduction equal to 85% of their cash invested. To the extent a partnership reported income, either from operations or as a result of the cancellation of partnership notes, that income will be reversed and a credit allowed for those amounts, to be used to offset deficiencies, if a timely claim for refund was filed. We believe that this is the Government's last offer and that refusal will result in a trial of the case.

We have done rough calculations of the approximate savings this offer would provide to a typical one-unit partner for each of the three years, based on his having claimed a write-off equal to 3.2 times his cash investment for 1982 and 1983 partners or a write-off equal to 2 times

EXHIBIT A

ZAPRUDER & ODELL



his cash investment for a 1984 partner. We assumed such a sample partner was in the highest marginal bracket for each year. For a 1982 partner, the offer would reduce the total amount due in the event of a loss from approximately $220,000 to approximately $102,000. For a 1983 partner, the amount due would be reduced from approximately $187,000 to approximately $84,000. For a 1984 partner, the amount due would be reduced from approximately $54,000 to about $25,500. We caution you that these estimates are very rough and general, and suggest that you ask your accountant to advise you of the specific effect the offer would have on you. In all events however, the offer appears to reduce the amount you would owe in the event of a total loss by more than 50%.

We believe that all partners should accept this offer. We have carefully evaluated the Empire offering, which serves as a test case. We have concluded that the chance of that partnership's prevailing is remote. That assessment is based on our review of our experts' report (which became available last month) and that of the government (which we received on September 4), as well as all of the other material we have assembled over the last year. We have concluded that on each of the three key issues -- the reasonableness of the mine development costs deducted, the economic substance of the deal as structured, and the profit motive which drove the investment -- we are unlikely to be able to persuade the Court to find in your favor. We also think that, because of the relative weakness of your position and certain unfavorable precedents, it is likely that the negligence penalty and substantial understatement penalty will each be upheld.

At first blush, Lincoln appears to be a much stronger case. In fact, the higher quality reserve study, when coupled with the partnership's relative success, has led us to conclude that Lincoln has a reasonable prospect of prevailing on profit motive and economic substance grounds. However, we have learned from a number of witnesses that the Lincoln partnership acquired a property with a recently operated mine that required minimal additional development costs. Our experts' estimates of the development costs

ZAPRUDER & ODELL



required to start the mine from scratch are only about one-half of those claimed, and would be reduced to much less if the pre-existing mine's development were taken into account. Further, the actual mine development costs incurred, from initiation of the partnership until it was determined that its property had been "mined-out," are less than the amount offered by the I.R.S. as a deduction pursuant to the settlement offer. In addition, another partnership shared the property with Lincoln and would have borne some of those costs. Consequently, even if we prevail on profit motive and economic substance, the up-front deduction attributable to mine development costs would be less than what the offer allows. Hence, we believe that the offer should be accepted for Lincoln as well.

In our view, partners in partnerships other than Lincoln and Empire should also accept the offer. The I.R.S. has taken the position that Lincoln is unique and that all the other partnerships are like Empire. Despite continuing efforts by us, we have been unable to convince the I.R.S. to change that view, and our efforts to enlist the Court's assistance have been unavailing. Hence, should Empire lose, regardless of what happens to Lincoln, it is very likely that each other partnership will have to appear in Court to prove its merits or find itself bound by the adverse decision in Empire. While we know less about those partnerships than we do about Lincoln and Empire (since we have been preparing the latter for trial) our review of the material we do have suggests strongly that they would be unlikely to prevail in that effort.

We recognize that this view of the case is bleaker than that expressed in our evaluation of this offer ten months ago. In that evaluation, we expressed our belief that Lincoln was entitled to a better offer, based on facts then known to us, while Empire might be able to negotiate a better deal. That evaluation made accepting the offer premature at that time. Unfortunately, the factual developments regarding Lincoln since that time have been unfavorable. Further, despite continual efforts by us to obtain a better offer for Empire, we have been unsuccessful, making it no longer premature to accept the outstanding offer.

ZAPRUDER & ODELL



Given our assessment of the remote possibility of success at trial and the substantial savings provided by the offer, we reiterate that it is our advice that all partners communicate their acceptance of this offer to their general partners at once.

Sincerely,

Henry G. Zapruder

Matthew D. Lerner

ZAPRUDER & ODELL
ATTORNEYS AT LAW
THE HOMER BUILDING
SUITE 800 SOUTH
601 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
TEL: (202) 508-9600 • FAX: (202) 508-9601

November 8, 1991

To All Contributors to the Swanton Partnerships'
Tax Defense Fund

Dear Clients:

The settlement offer which we communicated to you in our letter dated September 19, 1991 was accepted by 19 of the 20 partnerships formed between 1982 and 1984. California Coal Associates rejected the offer. However, the I.R.S. abandoned its original all-or-nothing requirement and settled with the 19 other partnerships. Hence, your cases have been settled.

The next step involves the preparation and execution of decision documents and closing agreements memorializing the terms of the settlement. The I.R.S. insists upon doing the initial drafting of those documents and assures us that it will be completed expeditiously. We will exert all of the pressure that we can to obtain those documents as soon as possible. We expect these will be available within sixty days, although our experience suggests that receipt of such documents may frequently take longer. Further, as yet, the I.R.S. has not committed to having them prepared by any particular time.

We would like to take this opportunity to urge each of you to meet with your personal tax advisor and determine whether it is in your interest to pay the tax and interest now that will otherwise be assessed when the decision documents are finalized. Interest will continue to run until you make such a payment. Your advisor should now be able to calculate how much you will owe reasonably accurately, and making a payment in that amount will stop the running of additional interest against you. Internal Revenue Announcement 86-114, 1986-47 I.R.B. 46, which your advisor should have a copy of, explains how you can make such a payment.

We are still waiting for the I.R.S. to resolve certain remaining technical issues, such as whether those of you who paid your cash contribution to a partnership in two separate

EXHIBIT B

ZAPRUDER & ODELL

Contributors to the Swanton Partnerships'
Tax Defense Fund
November 8, 1991
Page 2

years can deduct half of your total cash in the first year or must deduct half of each year's contribution in the year it was made. The I.R.S. is also considering whether a deduction of one-half of your note settlement payments will be allowed in the year of investment or the year they were paid. Of course, as soon as we receive answers to these questions, we will be in touch with you again.

Sincerely,

Henry G. Zapruder

Matthew D. Lerner

assigned STJ Pow 'c 9/10/01 Wash., (Spec.)

ORIGINAL

UNITED STATES TAX COURT

UNITED STATES TAX COURT
FILED
AUG 31 2001
AS STIPULATION OF SETTLEMENT BETWEEN THE TMP & RESPONDENT

GREENWICH ASSOCIATES,
KEVIN SMITH, TAX MATTERS PARTNER,

Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent.

Docket No. 24102-90
DL - SWANTON
Judge Powell

Powell

## DECISION

Pursuant to Rule 248(a) of the Tax Court Rules of Practice and Procedure, it is

ORDERED AND DECIDED: That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1982:

| Partnership Item | 1982 As Reported | As Determined |
|---|---|---|
| Mining Development Expenses | $ 4,200,000.00 | $ 707,000.00 |
| Interest Expense | 26,458.00 | -0- |
| Legal and Accounting | 19,508.00 | -0- |
| Amortization | 250.00 | -0- |
| General Partner Fee | 14,000.00 | -0- |
| Net Earnings from Self-Employment | (42,602.00) | -0- |

That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1983:

| Partnership Item | | 1983 As Reported | As Determined |
|---|---|---|---|
| Total Income | | $ 1,245.00 | $ -0- |
| Total Deductions | | 269,443.00 | -0- |
| Interest Expense | 261,000.00 | | |
| Legal and Accounting | 5,443.00 | | |
| Amortization | 3,000.00 | | |

EXHIBIT C

Docket No. 24102-90

| | | |
|---|---|---|
| Life Insurance | $ 950.00 | -0- |
| Net Earnings from Self-Employment | (2,695.00) | -0- |
| **Tax Preference Item** | | |
| Net Investment Income | $ (261,802.00) | $ -0- |
| **Investment Item** | | |
| Net Investment Income | 1,228.00 | -0- |

That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1984:

| Partnership Item | | 1984 As Reported | As Determined |
|---|---|---|---|
| Total Income | | $ 141,931.00 | $ 129,197.00 |
| Total Deductions | | 352,858.00 | -0- |
| Interest Expense | 261,000.00 | | |
| Mine Development Expenses | 79,197.00 | | |
| Production Royalty | 7,419.00 | | |
| Legal and Accounting | 1,500.00 | | |
| Amortization | 3,000.00 | | |
| Guaranteed Payment to Partners | 742.00 | | |
| Net Earnings from Self-Employment | | (1,377.00) | -0- |
| Gross Non-Farm Income | | 1,410.00 | -0- |
| **Tax Preference Item** | | | |
| Qualified Investment Income | | $ 140,521.00 | $ -0- |
| Qualified Investment Expenses | | 349,330.00 | -0- |

Docket No. 24102-90

Investment Interest

| | | |
|---|---|---|
| Investment Income | $ 972.00 | $ -0- |

Judge.

Entered:

* * * * *

It is hereby stipulated that the Court may enter the foregoing decision in the above-entitled case.

It is further stipulated that the undersigned Tax Matters Partner of Greenwich Associates, for the taxable years 1982, 1983, and 1984, by executing this stipulation, consents to the entry of the foregoing decision in this case and certifies that no party objects.

DAVID L. JORDAN
Acting Chief Counsel
Internal Revenue Service

9/11/96

KEVIN SMITH
Tax Matters Partner

By:

ROBERT B. MARINO
Assistant District Counsel
Tax Court No. MR0148
7 World Trade Center
24th Floor
New York, New York 10048

MATTHEW D. LERNER
Counsel for Petitioner
Tax Court No. LM0393
Zapruder & Odell
Suite 800 South
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 508-9663

Date: 9/25/96

Date: AUG 30 2001

**Department of the ~~reasury**
**1973 North Rulon W~~te Blvd.**
**Ogden, UT 84201**

**Date:** January 8, 2003

JEAN MATHIA
PO BOX 450417
GROVE OK 74345-0417

**Person to Contact:**
Ms. Waldi
**Employee Number:** 0478607058
**Telephone Number:**
1-866-899-9083
**Extension:** 8659
**Hours:** 6 a.m. to 3 p.m.
Mountain Time
Tuesday - Friday
**Taxpayer Identification Number:**
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
**Tax Year(s):** 1982 & 1984
**Partnership/S Corporation:**
Greenwich Associates
**Employer Identification Number:**
13-3141085

Dear Ms. Mathia:

Enclosed is Form 4549A-CG explaining how the adjustments made during our examination of the above partnership affect your individual income tax return(s). This form is for your records.

If you owe additional tax and/or penalties, we will send a billing notice including interest. The interest computation shown on the enclosed report is an estimate. It does not reflect any credits or payments. When the additional tax has been added to your account, you will receive a correct billing. You may want to pay the amount shown on our report, as interest will continue to accrue on any unpaid balance. If you are due a refund, it will be sent to you.

According to the settlement agreement, Internal Revenue Code Section 6621(c), interest at 120 percent of the normal rate applies to the partnership adjustment.

A copy of this letter has been forwarded to your authorized representative.

If you have any questions about this matter, please contact the person whose name, telephone number, and contact hours are shown above.

EXHIBIT D

be reached and a copy of this letter.

Thank you for your cooperation.

Sincerely,

Ms. Waldron

Tax Technician
Exam Field Support

Enclosure(s):
Form 4549A-CG
Publication 594

| Name and Address of Taxpayer | SS or EI Number: 5_ _4-2832 | Return Form No. 1040 |
|---|---|---|
| DOYLE & JEAN MATHIA<br>PO BOX 450417<br>GROVE OK 74345-0417 | Person with whom examination changes were discussed | Name and Title |

| 1. Adjustments to Income | Period End 12/31/1982 | Period End 12/31/1984 | Period End |
|---|---|---|---|
| A. ITEMIZED DEDUCTIONS | $ | $ 548.00 | $ |
| B. ORD. INC. GREENWICH ASSOC | | 10,961.00 | |
| C. ORD. LOSS GREENWICH ASSOC | 301,445.00 | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. | | | |
| I. | | | |
| J. | | | |
| K. | | | |
| L. | | | |
| M. | | | |
| N. | | | |
| O. | | | |
| P. | | | |
| Q. | | | |
| R. | | | |
| S. | | | |
| 2. Total Adjustments | 301,445.00 | 11,509.00 | |
| 3. Taxable Income Per Return or as Previously Adjusted | 75,243.00 | (9,030.00) | |
| 4. Corrected Taxable Income | 376,688.00 | 2,479.00 | |
| Tax Method | TAX RATE | TAX TABLE | |
| Filing Status | JOINT | JOINT | |
| 5. Tax | 175,793.00 | 0.00 | |
| 6. Additional Taxes | | | |
| 7. Corrected Tax Liability | 175,793.00 | 0.00 | |
| 8. Less Credits A. INVESTMENT TAX CREDIT | 25,157.00 | | |
| B. | | | |
| C. | | | |
| D. | | | |
| 9. Balance (Line 7 less total of lines 8A through 8D) | 150,636.00 | 0.00 | |
| 10. Plus Other Taxes A. ALTERNATIVE MINIMUM TAX | | 2,752.00 | |
| B. ITC RECAPTURE | | 1,156.00 | |
| C. | | | |
| D. | | | |
| 11. Total Corrected Tax Liability (Line 9 + Lines 10A to 10D) | 150,636.00 | 3,908.00 | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 1,276.00 | 1,577.00 | |
| 13. Adjustments to A. Special Fuels Credit | | | |
| B. | | | |
| 14. Deficiency - Increase in Tax or (Overassessment - Decrease in tax) (Line 11 less Line 12 adjusted by Line 13) | 149,360.00 | 2,331.00 | |
| 15. Adjustments to Prepayment Credits | | | |
| 16. Balance Due or Overpayment (Line 14 Adjusted by Line 15) (Excluding Interest and penalties) | $ 149,360.00 | $ 2,331.00 | $ |

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the State form.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 31 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid.

Income Tax Examination Changes

| Name of Taxpayer: DOYLE & JEAN MATHIA | SS or EI Number: 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 | Return Form No. 1040 |
|---|---|---|

| 17. Penalties | Period End 12/31/1982 | Period End 12/31/1984 | Period End |
|---|---|---|---|
| A. | $ | $ | $ |
| B. | | | |
| C. | | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. | | | |
| I. | | | |
| J. | | | |
| K. | | | |
| L. | | | |
| M. | | | |
| N. | | | |
| 18. Total Penalties | | | |
| 19. Underpayment attributable to negligence: (1981 - 1987) An Addition to the tax of 50 percent of the interest due on this underpayment will accrue until paid or assessed. | | | |
| 20. Underpayment attributable to fraud: (1982 - 1987) An addition to the tax of 50 percent of the interest due on this underpayment will accrue until paid or assessed. | | | |
| 21. Underpayment attributable to Tax Motivated Transactions: TMT Interest will accrue and be assessed at 120 percent of the underpayment rate in accordance with IRC 6621(c). | 149,360.00 | 2,331.00 | |
| Summary of Taxes, Penalties and Interest: | | | |
| A. Balance due or Overpayment of Taxes (line 16, page 1) | 149,360.00 | 2,331.00 | |
| B. Penalties (line 18, page 2) (computed to 02/02/2003) | | | |
| C. Interest (IRC 6601) (computed to 02/02/2003) | 777,591.45 | 9,092.99 | |
| D. TMT Interest (computed to 02/02/2003 on TMT underpay) | 356,377.64 | 4,274.35 | |
| E. Amount due or refund (sum of lines A. B. C. and D.) | 1,283,329.09 | 15,698.34 | |

Other Information:

Greenwich Associates 13-3141085

| Examiner's Signature | District | Date |
|---|---|---|
| Ms. Waldron | Ogden Service Center | 01/08/2003 |

| FORM 886-A | EXPLANATION OF ITEMS | SCHEDULE/EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>DOYLE & JEAN MATHIA | 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 | YEAR/PERIOD ENDED<br>198212 |

STANDARD PARAGRAPHS:

| | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| ORD. LOSS GREENWICH ASSOC | (361,436.00) | (59,991.00) | 301,445.00 |

We have adjusted your return in accordance with the examination results for the identified Partnership / S Corporation. The examination results are based on the provisions stipulated in the United States Tax Court decision regarding the Partnership / S Corporation return.

Identification Number: 5_ _-24-2832 TOTAL 5.00.00

198212 FORM 6251 - ALTERNATIVE MINIMUM TAX COMPUTATION

| | | |
|---|---|---|
| 1. Adjusted Gross Income | | 399,847.00 |
| 2. Excess Itemized deductions or | 18,159.00 | |
| 2a. Non-itemizing Charitable Contributions | 0.00 | |
| 3. Zero Bracket Amount | 3,400.00 | |
| 4. Exemptions | 5,000.00 | |
| 5. Add lines 2, 3 and 4 | | 26,559.00 |
| 6. Subtract line 5 from line 1 | | 373,288.00 |
| 7. Tax Preference Items | | 3,829.00 |
| 8. Line 6 plus line 7 - Alternative Minimum Taxable Income | | 377,117.00 |
| 9. $20,000 ($10,000 of married filing separately, or an estate or trust) | | 20,000.00 |
| 10. Subtract line 9 from line 8 | | 357,117.00 |
| 11. Smaller of line 10 or $40,000 | 40,000.00 | |
| 12. Line 10 less line 11 | 317,117.00 | |
| 13. 10% of line 11 | 4,000.00 | |
| 14. 20% of line 12 | 63,423.00 | |
| 15. Add line 13 and 14 | | 67,423.00 |
| 16. Tax from 1040 line 50 | 150,636.00 | |
| 17. Minimum Tax | 0.00 | |
| 18. Tax from Recapture of ITC | 0.00 | |
| 19. Total lines 16,17 and 18 | | 150,636.00 |
| 20. Subtract line 19 from line 15 | | 0.00 |
| 21. Foreign Tax Credit | | 0.00 |
| 22. Line 20 less line 21 | | 7,117.00 |
| 23. Credits allowed against Alternative Minimum Tax | | 5,858.00 |
| 24. Line 22 less line 23 - ALTERNATIVE MINIMUM TAX | | 0.00 |

198212 - EXPLANATION OF INTEREST ON TAX MOTIVATED TRANSACTION

It is determined that part of the underpayment of tax is attributable to tax motivated transactions as defined under Section 6621(c) of the Internal Revenue Code. Consequently, the annual rate of interest accruing after December 31, 1984 will be a percentage of the adjusted rate established under Section 6621(c) on any substantial underpayment attributable to tax motivated transactions. Interest applying to the amount on line 5 below will be computed and assessed at the applicable percentage.

| | |
|---|---|
| 1. Total corrected tax liability, Form 4549, line 11 | 150,636.00 |
| 2. Total corrected tax liability without regard to tax motivated transactions | 1,276.00 |
| 3. Line 1 less line 2 - underpayment attributable to tax motivated transactions (0 if under $1,000) | 149,360.00 |
| 4. Tax Deficiency, Form 4549, line 13 | 149,360.00 |
| 5. Lesser of line 3 or line 4 - amount to which Section 6621(a) applies | 149,360.00 |

ADJUSTMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS:

| | |
|---|---|
| ORD. LOSS GREENWICH ASSOC | 301,445.00 |

McAFEE&TAFT
A PROFESSIONAL CORPORATION

10TH FLOOR • TWO LEADERSHIP SQUARE
211 NORTH ROBINSON • OKLAHOMA CITY, OK 73102-7103
(405) 235-9621 • FAX (405) 235-0439
www.mcafeetaft.com

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

OFFICIAL USE

AUSTIN, TX 73301

| | | |
|---|---|---|
| Postage | $ 4.55 | UNIT ID: 0010 |
| Certified Fee | 2.30 | Postmark Here |
| Return Reciept Fee (Endorsement Required) | 1.75 | |
| Restricted Delivery Fee (Endorsement Required) | | CLERK: KP0284 |
| Total Postage & Fees | $ 8.60 | 10/26/05 |

CENTER CITY STA OKC OK 73102 OCT 26 2005 USPS

7003 2260 0004 1293 1336

Sent To
Street, Apt. No.; or PO Box No. Internal Revenue Service Center
City, State, ZIP+4 Austin, TX 73301

PS Form 3800, June 2002 See Reverse for Instructions

October 26, 2005

**Via Certified Mail – Return Receipt Requested**

Internal Revenue Service Center
Austin, TX 73301

Re: Forms 1040X, "Amended U.S. Individual Income Tax Return" for tax years 1982, 1983 and 1984

Dear Sir or Madam:

We have enclosed separate Forms 1040X, "Amended U.S. Individual Income Tax Return" for each of tax years 1982, 1983 and 1984 for Doyle V. Mathia (deceased February 19, 2000), SSN: 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, and Jean Mathia, SSN: 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, husband and wife.

Please process the refunds requested on each form.

We have also enclosed a copy of each form. Please date-stamp each copy and return each copy to us in the enclosed, postage-paid envelope. We are also submitting copies of these forms with the Office of the Internal Revenue Service in Oklahoma City, Oklahoma.

Thank you for your attention to this matter. Please call if you have any questions.

Sincerely,

Alan G. Holloway

Enclosures

EXHIBIT B

UNITED STATES POSTAL SERVICE

***** WELCOME TO *****
CENTER CITY
OKLAHOMA CITY, OK 73102
10/26/05 08:33PM

Store USPS Trans 167
Wkstn sys5002 Cashier KP92B4
Cashier's Name JENNIFER
Stock Unit Id WINJENNIFER
PO Phone Number 800-275-8777
USPS # 3961360018

1. Priority Mail 8.60
Destination: 73301
Weight: 1 lb. 6.30 oz.
Postage Type: PVI
Total Cost: 8.60
Base Rate: 4.55
SERVICES
Certified Mail 2.30
70032260000412931336
Rtn Recpt (Green Card) 1.75

Subtotal 8.60
Total 8.60

MasterCard 8.60

<23-903360964-98>
MasterCard
ACCT. NUMBER EXP CLERK ID
XXXX XXXX XXXX 8652 04/08 16
AUTH 829940 CREDIT TRANS # 007

ALL SALES FINAL ON STAMPS AND POSTAGE.
REFUNDS FOR GUARANTEED SERVICES ONLY.

Number of Items Sold: 1

FREE package pickup
from your home or office.
Visit us at www.usps.com/pickup
for complete information.
Source Code: C0042

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Internal Revenue Service Center
Austin, TX 73301

2. Article Number (Transfer from service label) 7003 2260 0004 1293 1336

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature X ☐ Agent ☐ Addressee

B. Received by (Printed Name) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED
OCT 29 2005
117
IRS-AUSC
AUSTIN, TEXAS

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes