Internal Revenue Service
Department of the Treasury
1973 North Rulon White Blvd.
Ogden, UT 84404-0049

Mail Stop: 4430
Person to Contact:
Ms. Waldron
Employee Number: 0478707058
Telephone Number:
1-866-899-9083
Extension: 8659
Hours: 6 a.m. to 3 p.m.
Mountain Time
Tuesday - Friday
Taxpayer Identification Number:
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
Tax Year(s): 1982-1984
Regarding:
Greenwich Associates
Employer Identification Number:
13-3141085

Date: July 17, 2006

JEAN MATHIA
PO BOX 450417
GROVE OK 74345-0417

Dear Ms. Mathia:

We received your request dated October 29, 2005, asking for reconsideration of adjustments made to your return. The item(s) you refer to on your request are partnership items that have been previously determined during a partnership proceeding.

You filed Forms 1040X to reverse prior assessments based upon the claim that the statute of limitations was expired prior to the assessment. You reference IRC §6229(f) and IRC §6231(b)(1)(C). IRC §6229(f) provides that the statute of limitations is held open for one year after partnership items are converted to nonpartnership items under IRC §6231.

The examined items were not converted to nonpartnership items under IRC §6231(b)(1)(C) in this case because there does not appear to have been an executed settlement agreement. A settlement agreement would have been executed on either a Form 906 or a Form 870. Since the issues were resolved by the tax court, it is clear that no prior settlement agreement was executed. Consequently, your request will not be considered and your partnership adjustments will remain as previously determined.

A copy of this letter has been forwarded to your authorized representative(s).

If you have any questions about this matter please contact the person whose name, telephone number, and contact hours are shown above.

If you write, please include your telephone number, the hours you can be reached and a copy of this letter.

Thank you for your cooperation.

Sincerely,

Ms. Waldron

Tax Technician
Exam Field Support



EXHIBIT C

Dear Ms. Mathia:

We received your request dated October 29, 2005, asking for reconsideration of adjustments made to your return. The item(s) you refer to on your request are partnership items that have been previously determined during a partnership proceeding.

You filed Forms 1040X to reverse prior assessments based upon the claim that the statute of limitations was expired prior to the assessment. You reference IRC §6229(f) and IRC §6231(b)(1)(C). IRC §6229(f) provides that the statute of limitations is held open for one year after partnership items are converted to nonpartnership items under IRC §6231.

The examined items were not converted to nonpartnership items under IRC §6231(b)(1)(C) in this case because there does not appear to have been an executed settlement agreement. A settlement agreement would have been executed on either a Form 906 or a Form 870. Since the issues were resolved by the tax court, it is clear that no prior settlement agreement was executed. Consequently, your request will not be considered and your partnership adjustments will remain as previously determined.

A copy of this letter has been forwarded to your authorized representative(s).

If you have any questions about this matter please contact the person whose name, telephone number, and contact hours are shown above.

If you write, please include your telephone number, the hours you can be reached and a copy of this letter.

Thank you for your cooperation.

EXHIBIT D

Form **1040X** (Rev. November 2003)

Department of the Treasury - Internal Revenue Service

# Amended U.S. Individual Income Tax Return

▶ See separate instructions.

OMB No. 1545-0091

This return is for calendar year ▶ 1983 , or fiscal year ended ▶

Please print or type

| | | |
|---|---|---|
| Your first name and initial: Doyle V. | Last name: Mathia (deceased 2/19/00) | Your social security number: 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 |
| If a joint return, spouse's first name and initial: Jean | Last name: Mathia | Spouse's social security number: 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 |
| Home address (no. and street) or P.O. box if mail is not delivered to your home: P.O. Box 450417 | Apt. no. | Phone number: (918) 786-7849 |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions.: Grove, Oklahoma 74345-0417 | | For Paperwork Reduction Act Notice, see page 6. |

A If the name or address shown above is different from that shown on the original return, check here ▶ [X]

B Has the original return been changed or audited by the IRS or have you been notified that it will be? [X] Yes [ ] No

C Filing status. Be sure to complete this line. Note. You cannot change from joint to separate returns after the due date.

On original return ▶ [ ] Single [X] Married filing jointly [ ] Married filing separately [ ] Head of household [ ] Qualifying widow(er)

On this return ▶ [ ] Single [X] Married filing jointly [ ] Married filing separately [ ] Head of household* [ ] Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

| Use Part II on the back to explain any changes | | A. Original amount or as previously adjusted (see page 2) | B. Net change - amount of increase or (decrease) - explain in Part II | C. Correct amount |
|---|---|---|---|---|
| **Income and Deductions (see pages 2-6)** | | | | |
| 1 Adjusted gross income (see page 3) | 1 | 27,928 | | 27,928 |
| 2 Itemized deductions or standard deduction (see page 3) | 2 | 8,423 | | 8,423 |
| 3 Subtract line 2 from line 1 | 3 | 19,505 | | 19,505 |
| 4 Exemptions. If changing, fill in Parts I and II on the back | 4 | 5,000 | | 5,000 |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | 14,505 | | 14,505 |
| **Tax Liability** 6 Tax (see page 4). Method used in col. C Tables | 6 | 1,595 | -1,595 | |
| 7 Credits (see page 4) | 7 | | | |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | 1,595 | -1,595 | |
| 9 Other taxes (see page 4) | 9 | 3,463 | -2,420 | 1,044 |
| 10 Total tax. Add lines 8 and 9 | 10 | 5,058 | -4,015 | 1,044 |
| **Payments** 11 Federal income tax withheld and excess social security and tier 1 RRTA tax withheld. If changing, see page 4 | 11 | 2,400 | | 2,400 |
| 12 Estimated tax payments, including amount applied from prior year's return | 12 | | | |
| 13 Earned income credit (EIC) | 13 | | | |
| 14 Additional child tax credit from Form 8812 | 14 | | | |
| 15 Credits from Form 2439, Form 4136, or Form 8885 | 15 | | | |
| 16 Amount paid with request for extension of time to file (see page 4) | 16 | | | |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | 6,108 |
| 18 Total payments. Add lines 11 through 17 in column C | 18 | | | 8,508 |
| **Refund or Amount You Owe** | | | | |
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | | | 3,449 |
| 20 Subtract line 19 from line 18 (see page 5) | 20 | | | 5,059 |
| 21 Amount you owe. If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | | | |
| 22 If line 10, column C, is less than line 20, enter the difference | 22 | | | 4,015 |
| 23 Amount of line 22 you want refunded to you | 23 | | | 4,015 |
| 24 Amount of line 22 you want applied to your estimated tax | 24 | | | |

Stamp: Acknowledgement of Receipt Only — RECEIVED OCT 28 2005 IRS-AUSC AUSTIN, TEXAS 85

**Sign Here** Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

▶ Jean Mathia (signature) 10-05-05 Your signature Date Personal Representative

▶ Jean Mathia (signature) 10-05-05 Spouse's signature. If a joint return, both must sign. Date

**Paid Preparer's Use Only**

Preparer's signature ▶ Filing as Surviving Spouse | Date | Check if self-employed [ ] | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.



JSA 3A0180 2.000

EXHIBIT E

## Part I Exemptions. See Form 1040 or 1040A instructions.

If you are not changing your exemptions, do not complete this part.
If claiming more exemptions, complete lines 25-31.
If claiming fewer exemptions, complete lines 25-30.

| | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|
| 25 Yourself and spouse . . . . . . . . . . . . . . . . . . . . . . . . . . **Caution.** If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | 25 | | | |
| 26 Your dependent children who lived with you . . . . . . . . . . . . . | 26 | | | |
| 27 Your dependent children who did not live with you due to divorce or separation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 | | | |
| 28 Other dependents . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 | | | |
| 29 Total number of exemptions. Add lines 25 through 28 . . . . . . . . . | 29 | | | |
| 30 Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2003 | $3,050 | $104,625 |
| 2002 | 3,000 | 103,000 |
| 2001 | 2,900 | 99,725 |
| 2000 | 2,800 | 96,700 |

31 Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name | Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

No. of your children on line 31 who:
- lived with you . . . . . . ▶ ☐
- did not live with you due to divorce or separation (see page 5) . . . . ▶ ☐

Dependents on line 31 not entered above . ▶ ☐

## Part II Explanation of Changes to Income, Deductions, and Credits

**Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.**

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here . . . . . . . . . . . . . ▶ ☐

See Statement attached hereto and made a part hereof by reference.

## Part III Presidential Election Campaign Fund. Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here . . . . . . . . . . . . ▶ ☐

**Doyle V. Mathia (deceased 2/19/00)**
**& Jean Mathia**
**SSN: 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**
**Tax Year 1983**

## STATEMENT ATTACHED TO AND MADE A PART OF FORM 1040X, "AMENDED U.S. INDIVIDUAL INCOME TAX RETURN" FOR TAX YEAR 1983

### Part II (Relating to Line 6)

For reasons discussed below, the tax in the amount of $4,015 paid by the taxpayers on or about October 27, 2003, relating to tax year 1983, is an "overpayment" that is properly refundable to the taxpayers.

### Facts

This claim for tax refund is submitted on behalf of Doyle V. Mathia (deceased 2/19/2000) (SSN: 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) and Jean Mathia (SSN: 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) (collectively, the "Taxpayers") pursuant to Internal Revenue Code ("Code") §§ 6401(a) and 6402(a). Doyle V. Mathia, deceased, was a limited partner in Greenwich Associates, a New York limited partnership (the "Partnership") (FEIN 13-3141085). The Partnership was one of approximately 50 coal programs or partnerships sponsored by the Swanton Corporation, a Delaware corporation (collectively, the "Swanton Partnerships").

Jean Mathia is the surviving spouse of Doyle V. Mathia. Doyle and Jean Mathia's 1982, 1983 and 1984 joint income tax returns included items attributable to Mr. Mathia's Partnership interest.

The Partnership was subject to the Tax Equity & Fiscal Responsibility Act of 1982 ("TEFRA") provisions of Code §§ 6221-6233. The Partnership received a Notice of the Beginning of an Administrative Proceeding ("NBAP") on the following dates:

| Tax Year: | Date NBAP Received: |
|---|---|
| 1982 | Date unknown |
| 1983 | December 27, 1984 |
| 1984 | March 16, 1987 |

On June 11, 1985, the Partnership submitted a proposed settlement offer consistent with settlement guidelines proposed by the Internal Revenue Service (the "Service"). On July 8, 1985, Service personnel advised the Partnership of the suspension of settlement discussions due to conflicts in administration between the Service's Buffalo District and Kentucky District.

The Service issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for tax years 1982, 1983 and 1984 on August 3, 1990. On October 26, 1990, the Partnership filed a petition in Tax Court for readjustment of the FPAA in a case styled as *Greenwich Associates v. Commissioner*, Docket No. 024102-90, United States Tax Court.

The Service made at least two settlement offers in the case. The Service communicated a settlement offer to the Swanton Partnerships in or around November, 1990. See September 19, 1991 letter from Counsel for Greenwich Associates to All Members of the Swanton Partnerships' Tax Defense Fund (the "September 19, 1991 Letter") (copy attached as Exhibit A). This offer was not accepted by any of the Swanton Partnerships. The Service made at least one other offer, in September, 1991 (the "September 1991 Offer"), that was "essentially unchanged" from the earlier offer. See September 19, 1991 Letter, Exhibit A.

In the September 19, 1991 Letter, Counsel for Greenwich Associates recommended that all Swanton Partnerships accept the September 1991 Offer. By November, 1991, 19 of the 20 Swanton Partnerships, including Greenwich Associates, had accepted the September 1991 Offer. See November 8, 1991 letter from Counsel for Greenwich Associates to All Contributors to the Swanton Partnerships' Tax Defense Fund (copy attached as Exhibit B). The parties may have continued to work out the details of the settlement agreement until sometime in 1993.

On July 3, 1995, the Service provided documents to procedurally dismiss the Tax Court case to counsel for the Partnership. These documents included a document titled "STIPULATION OF SETTLEMENT BETWEEN THE TMP & RESPONDENT", which restated the terms of the agreement. The Partnership executed the documents and submitted them to the Internal Revenue Service District Counsel's office on July 17, 1996. Due to an error on the part of the Service, a revised "STIPULATION OF SETTLEMENT BETWEEN THE TMP & RESPONDENT" was issued by the Service on July 31, 1996 and again on September 6, 1996 (the "Stipulation of Settlement").

Upon receipt of the revised Stipulation of Settlement from the Service on September 6, 1996, the representative for the Partnership signed the Stipulation of Settlement and returned it to the Service on September 25, 1996. The Service countersigned the Stipulation of Settlement on August 30, 2001, almost 5 years later. The Stipulation of Settlement was filed with, and entered by, the Tax Court on August 31, 2001 (copy attached as Exhibit C).

The Service mailed a computational adjustment for tax year 1983 to the Taxpayers on September 27, 2002. A copy of the computational adjustment for tax year 1983 is attached hereto as Exhibit D. According to the Service's transcript for the Taxpayers, the Service assessed the tax in the amount of $4,015 on January 27, 2003.

On or about October 27, 2003, the Taxpayers paid all of the tax attributable to disallowed Partnership items reflected in the Taxpayers' 1982, 1983 and 1984 income tax returns as follows:

| Tax Year | Amount |
|---|---|
| 1982 | $149,360 |
| 1983 | 4,015 |
| 1984 | 2,331 |
| | $155,706 |

**Statute of Limitations**

Code § 6229(f) provides that, if an item becomes a non-partnership item by reason of Code § 6231(b), then the period for assessing any tax shall not expire before the date which is one year after the date on which the item became a non-partnership item. Code § 6231(b)(1)(C) provides that a partnership item becomes a non-partnership item as of the date the Secretary or the Attorney General enters into a settlement agreement with the partner with respect to such item.

As discussed above, an agreement was reached between the Greenwich Associates tax matters partner and the Service no later than November 1991 (the "1991 Settlement Agreement"). This agreement was a "settlement agreement" under Code § 6231(b)(1)(C), and, pursuant to Code § 6231(b)(1), no later than November 1991, the date 1991 Settlement Agreement was reached, all Partnership items became non-partnership items. Accordingly, the Service had one year to assess the partners of the Partnership for the tax. The Service did not assess the tax until January 2003. This assessment was an assessment made out of time under Code § 6229(f).

Alternatively, even if the parties continued to work out the details of the 1991 Settlement Agreement until sometime in 1993, the settlement agreement would be considered final no later than 1993, and the assessment would still be untimely.

Alternatively, even if the 1991 Settlement Agreement is disregarded, on September 25, 1996, the TMP signed the Stipulation of Settlement and mailed it to the Service. On August 30, 2001, the Service signed this same Stipulation of Settlement, which was then filed with and entered by the Tax Court on August 31, 2001 (the "2001 Stipulation of Settlement Agreement").

The 2001 Stipulation of Settlement Agreement was also a "settlement agreement" under Code § 6231(b)(1)(C), and, pursuant to Code § 6231(b)(1), on August 30, 2001, the date the 2001 Stipulation of Settlement Agreement was signed, all Partnership items became non-partnership items. Accordingly, pursuant to Code § 6229(f), the statute of limitations for assessment would have expired one year from August 30, 2001, on August 30, 2002.

The Service did not assess the tax until January 2003. The period for assessing tax under Code § 6501, and any other provision of the Code, had also expired by this time. Therefore, under any view discussed above, the assessment was clearly an assessment made out of time.

Code § 6402 provides that, in the case of any "overpayment", the Secretary within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of a tax on the part of the person who made the overpayment and shall refund any balance to such person. Code § 6401(a) provides that the term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation.

**Conclusion**

The tax in the amount of $4,015 paid by the Taxpayers on or about October 27, 2003, relating to tax year 1983, is an "overpayment" that is properly refundable to the Taxpayers.

ZAPRUDER & ODELL
ATTORNEYS AT LAW
THE HOMER BUILDING
SUITE 800 SOUTH
601 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
TEL: (202) 508-9600 FAX: (202) 508-9601

September 19, 1991

ATTORNEY-CLIENT PRIVILEGED

To All Members of the Swanton Partnerships
Tax Defense Fund

Dear Clients:

We are writing to advise you that it is our view that you should accept the Government's settlement offer which was communicated to us this week. As you know, the trial of the 1982-84 partnerships is scheduled to commence on October 21, 1991 in Washington, making the timeframe for a decision on the offer quite short. In fact, the deadline for responding to your general partner is September 28, 1991.

The Government's offer is essentially unchanged from the offer made ten months ago. For each partnership other than Lincoln, the I.R.S. will allow a deduction equal to one-half of the amount of the cash investment. The negligence and substantial understatement penalties will be conceded by the I.R.S., but interest at the penalty rate will be applied. All additional deductions will be disallowed. The Lincoln offer is the same except that Lincoln partners will be entitled to a deduction equal to 85% of their cash invested. To the extent a partnership reported income, either from operations or as a result of the cancellation of partnership notes, that income will be reversed and a credit allowed for those amounts, to be used to offset deficiencies, if a timely claim for refund was filed. We believe that this is the Government's last offer and that refusal will result in a trial of the case.

We have done rough calculations of the approximate savings this offer would provide to a typical one-unit partner for each of the three years, based on his having claimed a write-off equal to 3.2 times his cash investment for 1982 and 1983 partners or a write-off equal to 2 times

EXHIBIT A

his cash investment for a 1984 partner. We assumed such a sample partner was in the highest marginal bracket for each year. For a 1982 partner, the offer would reduce the total amount due in the event of a loss from approximately $220,000 to approximately $102,000. For a 1983 partner, the amount due would be reduced from approximately $187,000 to approximately $84,000. For a 1984 partner, the amount due would be reduced from approximately $54,000 to about $25,500. We caution you that these estimates are very rough and general, and suggest that you ask your accountant to advise you of the specific effect the offer would have on you. In all events however, the offer appears to reduce the amount you would owe in the event of a total loss by more than 50%.

We believe that all partners <u>should</u> accept this offer. We have carefully evaluated the Empire offering, which serves as a test case. We have concluded that the chance of that partnership's prevailing is remote. That assessment is based on our review of our experts' report (which became available last month) and that of the government (which we received on September 4), as well as all of the other material we have assembled over the last year. We have concluded that on each of the three key issues -- the reasonableness of the mine development costs deducted, the economic substance of the deal as structured, and the profit motive which drove the investment -- we are unlikely to be able to persuade the Court to find in your favor. We also think that, because of the relative weakness of your position and certain unfavorable precedents, it is likely that the negligence penalty and substantial understatement penalty will each be upheld.

At first blush, Lincoln appears to be a much stronger case. In fact, the higher quality reserve study, when coupled with the partnership's relative success, has led us to conclude that Lincoln has a reasonable prospect of prevailing on profit motive and economic substance grounds. However, we have learned from a number of witnesses that the Lincoln partnership acquired a property with a recently operated mine that required minimal additional development costs. Our experts' estimates of the development costs

ZAPRUDER & ODELL



required to start the mine from scratch are only about one-half of those claimed, and would be reduced to much less if the pre-existing mine's development were taken into account. Further, the actual mine development costs incurred, from initiation of the partnership until it was determined that its property had been "mined-out," are less than the amount offered by the I.R.S. as a deduction pursuant to the settlement offer. In addition, another partnership shared the property with Lincoln and would have borne some of those costs. Consequently, even if we prevail on profit motive and economic substance, the up-front deduction attributable to mine development costs would be less than what the offer allows. Hence, we believe that the offer should be accepted for Lincoln as well.

In our view, partners in partnerships other than Lincoln and Empire should also accept the offer. The I.R.S. has taken the position that Lincoln is unique and that all the other partnerships are like Empire. Despite continuing efforts by us, we have been unable to convince the I.R.S. to change that view, and our efforts to enlist the Court's assistance have been unavailing. Hence, should Empire lose, regardless of what happens to Lincoln, it is very likely that each other partnership will have to appear in Court to prove its merits or find itself bound by the adverse decision in Empire. While we know less about those partnerships than we do about Lincoln and Empire (since we have been preparing the latter for trial) our review of the material we do have suggests strongly that they would be unlikely to prevail in that effort.

We recognize that this view of the case is bleaker than that expressed in our evaluation of this offer ten months ago. In that evaluation, we expressed our belief that Lincoln was entitled to a better offer, based on facts then known to us, while Empire might be able to negotiate a better deal. That evaluation made accepting the offer premature at that time. Unfortunately, the factual developments regarding Lincoln since that time have been unfavorable. Further, despite continual efforts by us to obtain a better offer for Empire, we have been unsuccessful, making it no longer premature to accept the outstanding offer.

ZAPRUDER & ODELL



Given our assessment of the remote possibility of success at trial and the substantial savings provided by the offer, we reiterate that it is our advice that all partners communicate their acceptance of this offer to their general partners at once.

Sincerely,

Henry G. Zapruder

Matthew D. Lerner

ZAPRUDER & ODELL
ATTORNEYS AT LAW
THE HOMER BUILDING
SUITE 800 SOUTH
601 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
TEL: (202) 808-9600 · FAX: (202) 808-9601

November 8, 1991

To All Contributors to the Swanton Partnerships'
Tax Defense Fund

Dear Clients:

The settlement offer which we communicated to you in our letter dated September 19, 1991 was accepted by 19 of the 20 partnerships formed between 1982 and 1984. California Coal Associates rejected the offer. However, the I.R.S. abandoned its original all-or-nothing requirement and settled with the 19 other partnerships. Hence, your cases have been settled.

The next step involves the preparation and execution of decision documents and closing agreements memorializing the terms of the settlement. The I.R.S. insists upon doing the initial drafting of those documents and assures us that it will be completed expeditiously. We will exert all of the pressure that we can to obtain those documents as soon as possible. We expect these will be available within sixty days, although our experience suggests that receipt of such documents may frequently take longer. Further, as yet, the I.R.S. has not committed to having them prepared by any particular time.

We would like to take this opportunity to urge each of you to meet with your personal tax advisor and determine whether it is in your interest to pay the tax and interest now that will otherwise be assessed when the decision documents are finalized. Interest will continue to run until you make such a payment. Your advisor should now be able to calculate how much you will owe reasonably accurately, and making a payment in that amount will stop the running of additional interest against you. Internal Revenue Announcement 86-114, 1986-47 I.R.B. 46, which your advisor should have a copy of, explains how you can make such a payment.

We are still waiting for the I.R.S. to resolve certain remaining technical issues, such as whether those of you who paid your cash contribution to a partnership in two separate

EXHIBIT B

ZAPRUDER & ODELL



years can deduct half of your total cash in the first year or must deduct half of each year's contribution in the year it was made. The I.R.S. is also considering whether a deduction of one-half of your note settlement payments will be allowed in the year of investment or the year they were paid. Of course, as soon as we receive answers to these questions, we will be in touch with you again.

Sincerely,

Henry G. Zapruder

Matthew D. Lerner

assigned STJ Pow 'c 9/10/01 Wash., (Spec.)

ORIGINAL

UNITED STATES TAX COURT

UNITED STATES TAX COURT
FILED
AUG 31 2001
AS STIPULATION OF SETTLEMENT
BETWEEN THE TMP & RESPONDENT

GREENWICH ASSOCIATES,
KEVIN SMITH, TAX MATTERS PARTNER,

Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent.

Docket No. 24102-90
DL - SWANTON
Judge Powell

Powell

## DECISION

Pursuant to Rule 248(a) of the Tax Court Rules of Practice and Procedure, it is

ORDERED AND DECIDED: That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1982:

| Partnership Item | 1982 As Reported | As Determined |
|---|---|---|
| Mining Development Expenses | $ 4,200,000.00 | $ 707,000.00 |
| Interest Expense | 26,458.00 | -0- |
| Legal and Accounting | 19,508.00 | -0- |
| Amortization | 250.00 | -0- |
| General Partner Fee | 14,000.00 | -0- |
| Net Earnings from Self-Employment | (42,602.00) | -0- |

That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1983:

| Partnership Item | | 1983 As Reported | As Determined |
|---|---|---|---|
| Total Income | | $ 1,245.00 | $ -0- |
| Total Deductions | | 269,443.00 | -0- |
| Interest Expense | 261,000.00 | | |
| Legal and Accounting | 5,443.00 | | |
| Amortization | 3,000.00 | | |

EXHIBIT C

Docket No. 24102-90

| | | |
|---|---|---|
| Life Insurance | $ 950.00 | -0- |
| Net Earnings from Self-Employment | (2,695.00) | -0- |
| <u>Tax Preference Item</u> | | |
| Net Investment Income | $ (261,802.00) | $ -0- |
| <u>Investment Item</u> | | |
| Net Investment Income | 1,228.00 | -0- |

That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1984:

| <u>Partnership Item</u> | | <u>1984 As Reported</u> | <u>As Determined</u> |
|---|---|---|---|
| Total Income | | $ 141,931.00 | $ 129,197.00 |
| Total Deductions | | 352,858.00 | -0- |
| Interest Expense | 261,000.00 | | |
| Mine Development Expenses | 79,197.00 | | |
| Production Royalty | 7,419.00 | | |
| Legal and Accounting | 1,500.00 | | |
| Amortization | 3,000.00 | | |
| Guaranteed Payment to Partners | 742.00 | | |
| Net Earnings from Self-Employment | | (1,377.00) | -0- |
| Gross Non-Farm Income | | 1,410.00 | -0- |
| <u>Tax Preference Item</u> | | | |
| Qualified Investment Income | | $ 140,521.00 | $ -0- |
| Qualified Investment Expenses | | 349,330.00 | -0- |

Docket No. 24102-90

Investment Interest

| | | |
|---|---|---|
| Investment Income | $ 972.00 | $ -0- |

Judge.

Entered:

* * * * *

It is hereby stipulated that the Court may enter the foregoing decision in the above-entitled case.

It is further stipulated that the undersigned Tax Matters Partner of Greenwich Associates, for the taxable years 1982, 1983, and 1984, by executing this stipulation, consents to the entry of the foregoing decision in this case and certifies that no party objects.

DAVID L. JORDAN
Acting Chief Counsel
Internal Revenue Service

9/11/96

KEVIN SMITH
Tax Matters Partner

By:

ROBERT B. MARINO
Assistant District Counsel
Tax Court No. MR0148
7 World Trade Center
24th Floor
New York, New York 10048

MATTHEW D. LERNER
Counsel for Petitioner
Tax Court No. LM0393
Zapruder & Odell
Suite 800 South
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 508-9663

Date: 9/25/96

Date: AUG 30 2001

Internal Revenue Service
Department of the Treasury
1973 North Rulon White Blvd.
Ogden, UT 84201

Mail Stop: 4410
Person to Contact:
Ms. Payne
Employee Number: 0478802981
Telephone Number:
1-866-899-9083
Extension: 8656
Hours: 7 a.m. to 3 p.m.
Mountain Time
Monday - Friday
Taxpayer Identification Number:
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
Tax Year(s): 1983
Partnership/S Corporation:
Greenwich Association
Employer Identification Number:
13-3141085

Date: September 27, 2002

DOYLE V (DECD) & JEAN MATHIA
PO BOX 450417
GROVE OK 74345-0417177

Dear Ms. Mathia:

Enclosed is Form 4549A-CG explaining how the adjustments made during our examination of the above partnership/S corporation affect your individual income tax return(s). This form is for your records.

If you owe additional tax and/or penalties, we will send a billing notice including interest. The interest computation shown on the enclosed report is an estimate. It does not reflect any credits or payments. When the additional tax has been added to your account, you will receive a correct billing. You may want to pay the amount shown on our report, as interest will continue to accrue on any unpaid balance. If you are due a refund, it will be sent to you.

If you have any questions about this matter, please contact the person whose name, telephone number, and contact hours are shown above.

If you write, please include your telephone number, the hours you can be reached and a copy of this letter.

Thank you for your cooperation.

Sincerely,

Ms. Payne

Tax Technician
Exam Field Support

Enclosure(s):
Form 4549A-CG
Publication 594

TS-10 (Rev. 8-99)



EXHIBIT D

Department of the Treasury - Internal Revenue Service
Income Tax Examination Changes

| Name and Address of Taxpayer | SS or EI Number: | | Return Form No. |
|---|---|---|---|
| DOYLE & JEAN MATHIA<br>PO BOX 417<br>GROVE OK 74344-0417 | 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 | | 1040 |
| | Person with whom examination changes were discussed | Name and Title | |

| 1. Adjustments to Income | Period End 12/31/1983 | Period End | Period End |
|---|---|---|---|
| A. GREENWICH 13-3141085 | $ 22,754.00 | $ | $ |
| B. ITEMIZED DEDUCTIONS | 1,137.00 | | |
| C. | | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. | | | |
| I. | | | |
| J. | | | |
| K. | | | |
| L. | | | |
| M. | | | |
| N. | | | |
| O. | | | |
| P. | | | |
| Q. | | | |
| R. | | | |
| S. | | | |
| 2. Total Adjustments | 23,891.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | (9,386.00) | | |
| 4. Corrected Taxable Income | 14,505.00 | | |
| Tax Method | TAX TABLE | | |
| Filing Status | JOINT | | |
| 5. Tax | 1,595.00 | | |
| 6. Additional Taxes | | | |
| 7. Corrected Tax Liability | 1,595.00 | | |
| 8. Less Credits A. | | | |
| B. | | | |
| C. | | | |
| D. | | | |
| 9. Balance (Line 7 less total of lines 8A through 8D) | 1,595.00 | | |
| 10. Plus Other Taxes A. ALTERNATIVE MINIMUM TAX | 3,463.00 | | |
| B. | | | |
| C. | | | |
| D. | | | |
| 11. Total Corrected Tax Liability (Line 9 + lines 10A to 10D) | 5,058.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 1,043.00 | | |
| 13. Adjustments to A. Special Fuels Credit | | | |
| B. | | | |
| 14. Deficiency - Increase in Tax or (Overassessment - Decrease in tax) (Line 11 less Line 12 adjusted by Line 13) | 4,015.00 | | |
| 15. Adjustments to Prepayment Credits | | | |
| 16. Balance Due or Overpayment (Line 14 Adjusted by Line 15) (Excluding Interest and penalties) | $ 4,015.00 | $ | $ |

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the State form.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 31 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid.

RGS Ver. 5.00.08 Page 1 of 2 Form 4549A-CG (Rev. 1-91)

Department of the Treasury - Internal Reve... Service
Income Tax Examination Changes

| Name of Taxpayer: DOYLE & JEAN MATHIA | SS or EI Number: 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 | | Return Form No. 1040 |
|---|---|---|---|
| 17. Penalties | Period End 12/31/1983 | Period End | Period End |
| A. | $ | $ | $ |
| B. | | | |
| C. | | | |

Department of the Treasury - Internal Revenue Service
Income Tax Examination Changes

| Name and Address of Taxpayer | SS or EI Number: | | Return Form No. |
|---|---|---|---|
| DOYLE & JEAN MATHIA<br>PO BOX 417<br>GROVE OK 74344-0417 | 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 | | 1040 |
| | Person with whom examination changes were discussed | Name and Title | |

| 1. Adjustments to Income | Period End 12/31/1983 | Period End | Period End |
|---|---|---|---|
| A. GREENWICH 13-3141085 | $ 22,754.00 | $ | $ |
| B. ITEMIZED DEDUCTIONS | 1,137.00 | | |
| C. | | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. | | | |
| I. | | | |
| J. | | | |
| K. | | | |
| L. | | | |
| M. | | | |
| N. | | | |
| O. | | | |
| P. | | | |
| Q. | | | |
| R. | | | |
| S. | | | |
| 2. Total Adjustments | 23,891.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | (9,386.00) | | |
| 4. Corrected Taxable Income | 14,505.00 | | |
| Tax Method | TAX TABLE | | |
| Filing Status | JOINT | | |
| 5. Tax | 1,595.00 | | |
| 6. Additional Taxes | | | |
| 7. Corrected Tax Liability | 1,595.00 | | |
| 8. Less Credits A. | | | |
| B. | | | |
| C. | | | |
| D. | | | |
| 9. Balance (Line 7 less total of lines 8A through 8D) | 1,595.00 | | |
| 10. Plus Other Taxes A. ALTERNATIVE MINIMUM TAX | 3,463.00 | | |
| B. | | | |
| C. | | | |
| D. | | | |
| 11. Total Corrected Tax Liability (Line 9 + lines 10A to 10D) | 5,058.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 1,043.00 | | |
| 13. Adjustments to A. Special Fuels Credit | | | |
| B. | | | |
| 14. Deficiency - Increase in Tax or (Overassessment - Decrease in tax) (Line 11 less Line 12 adjusted by Line 13) | 4,015.00 | | |
| 15. Adjustments to Prepayment Credits | | | |
| 16. Balance Due or Overpayment (Line 14 Adjusted by Line 15) (Excluding Interest and penalties) | $ 4,015.00 | $ | $ |

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the State form.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 31 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid.

RGS Ver. 5.00.00 Page 1 of 2 Form 4549-CG (Rev. 1-91)

Department of the Treasury - Internal Revenue Service
Income Tax Examination Changes

| | | |
|---|---|---|
| Name of Taxpayer: DOYLE & JEAN MATHIA | SS or EI Number: 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 | Return Form No. 1040 |

| 17. Penalties | Period End 12/31/1983 | Period End | Period End |
|---|---|---|---|
| A. | $ | $ | $ |
| B. | | | |
| C. | | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. | | | |
| I. | | | |
| J. | | | |
| K. | | | |
| L. | | | |
| M. | | | |
| N. | | | |
| 18. Total Penalties | | | |
| 19. Underpayment attributable to negligence: (1981 - 1987) An Addition to the tax of 50 percent of the interest due on this underpayment will accrue until paid or assessed. | | | |
| 20. Underpayment attributable to fraud: (1982 - 1987) An addition to the tax of 50 percent of the interest due on this underpayment will accrue until paid or assessed. | | | |
| 21. Underpayment attributable to Tax Motivated Transactions: TMT Interest will accrue and be assessed at 120 percent of the underpayment rate in accordance with IRC 6621(c). | 4,015.00 | | |
| Summary of Taxes, Penalties and Interest: | | | |
| A. Balance due or Overpayment of Taxes (line 16, page 1) | 4,015.00 | | |
| B. Penalties (line 18, page 2) (computed to 10/27/2002) | | | |
| C. Interest (IRC 6601) (computed to 10/27/2002) | 17,735.45 | | |
| D. TMT Interest (computed to 10/27/2002 on TMT underpay) | 8,269.84 | | |
| E. Amount due or refund (sum of lines A, B, C, and D.) | 30,020.29 | | |

Other Information:

| | | |
|---|---|---|
| Examiner's Signature<br>Ms. Payne 0478402981 | District<br>Ogden Service Center | Date<br>09/27/2002 |

RGS Ver. 5.00.00 Page 2 of 2 Form 4549A-CG (Rev. 1-91)

Name Of Taxpayer: YLE & JEAN MATHIA 09/27/2002
Identification Number: 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 TOTAL 5.00.00

198312 SCHEDULE A - ITEMIZED DEDUCTIONS

| | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| 1. Medicine and drugs | 0.00 | 0.00 | 0.00 |
| 2. 1% of Adjusted Gross Income | 52.00 | 279.00 | |
| 3. Balance | 0.00 | 0.00 | 0.00 |
| 4. Medical, dental and insurance premimums | 2,589.00 | 2,589.00 | 0.00 |
| 5. Total | 2,589.00 | 2,589.00 | 0.00 |
| 6. 0.050 of Adjusted Gross Income | 259.00 | 1,396.00 | |
| 7. Net Medical and Dental Expenses | 2,330.00 | 1,193.00 | 1,137.00 |
| 8. Taxes | 2,265.00 | 2,265.00 | 0.00 |
| 9. Home Interest Expense | 5,583.00 | 5,583.00 | 0.00 |
| 10. Other Interest Expense | 618.00 | 618.00 | 0.00 |
| 11. Total Interest Expense | 6,201.00 | 6,201.00 | 0.00 |
| 12. Contributions | 1,652.00 | 1,652.00 | 0.00 |
| 13. Casualty and Theft Losses | 0.00 | 0.00 | 0.00 |
| 14. Miscellaneous Deductions | 512.00 | 512.00 | 0.00 |
| 15. Sum of lines 7, 8, 11, 12, 13 and 14 | 12,960.00 | 11,823.00 | 1,137.00 |
| 16. Zero Bracket Amount | 3,400.00 | 3,400.00 | 0.00 |
| 17. EXCESS ITEMIZED DEDUCTIONS Line 15 Less Line 16 | 9,560.00 | 8,423.00 | 1,137.00 |

Name Of Taxpayer: DOYLE & JEAN MATHIA 09/27/20
Identification Number: 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 TOTAL 5.00.00

198312 FORM 6251 - ALTERNATIVE MINIMUM TAX COMPUTATION

| | | | |
|---|---|---|---|
| 1. Adjusted Gross Income | | | 27,928.00 |
| 2. Medical and dental expense | 1,193.00 | | |
| 3. 0.050 of Adjusted Gross Income | 1,396.00 | | |
| 4. Line 2 less line 3 | | 0.00 | |
| 5. Contributions | | 1,652.00 | |
| 6. Casualty and theft losses | | 0.00 | |
| 7. Interest expense for residence | | 5,583.00 | |
| 8. Other interest expense | 618.00 | | |
| 9. Net Investment Income | 40,174.00 | | |
| 10. Lesser of line 8 or 9 | | 618.00 | |
| 11. Gambling losses to the extent of winnings | | 0.00 | |
| 12. Estate tax allowable under Section 691(c) | | 0.00 | |
| 13. Sum of lines 4, 5, 6, 7, 10, 11 and 12 | | | 7,853.00 |
| 14. Line 1 less Line 13 | | | 20,075.00 |
| 15. Tax preference items | | | 45,217.00 |
| 16. Sum of lines 14 and 15 - Alt Min Taxable Income | | | 65,292.00 |
| 17. Limitation amount | | | 40,000.00 |
| 18. Line 16 less line 17 | | | 25,292.00 |
| 19. 20% of line 18 | | | 5,058.00 |
| 20. Adjusted tax less total credits | | | 1,595.00 |
| 21. Line 19 less line 20 | | | 3,463.00 |
| 22. Foreign Tax Credit | | | 0.00 |
| 23. Line 21 less line 22 - ALTERNATIVE MINIMUM TAX | | | 3,463.00 |

Name of Taxpayer: DOYLE & JEAN MATHIA 09/27/200
Identification Number: 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 TOTAL 5.00.00

198312 - EXPLANATION OF INTEREST ON TAX MOTIVATED TRANSACTION

It is determined that part of the underpayment of tax is attributable to tax motivated transactions as defined under Section 6621(c) of the Internal Revenue Code. Consequently, the annual rate of interest accruing after December 31, 1984 will be a percentage of the adjusted rate established under Section 6621(c) on any substantial underpayment attributable to tax motivated transactions. Interest applying to the amount on line 5 below will be computed and assessed at the applicable percentage.

| | | |
|---|---|---|
| 1. | Total corrected tax liability, Form 4549, line 11 | 5,058.00 |
| 2. | Total corrected tax liability without regard to tax motivated transactions | 93.00 |
| 3. | Line 1 less line 2 - underpayment attributable to tax motivated transactions (0 if under $1,000) | 4,965.00 |
| 4. | Tax Deficiency, Form 4549, line 13 | 4,015.00 |
| 5. | Lesser of line 3 or line 4 - amount to which Section 6621(a) applies | 4,015.00 |

ADJUSTMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS:

GREENWICH 13-3141085 22,754.00

# Form 1040X (Rev. November 2003)

Department of the Treasury - Internal Revenue Service

## Amended U.S. Individual Income Tax Return

▶ See separate instructions.

OMB No. 1545-0091

This return is for calendar year ▶ 1984 , or fiscal year ended ▶ ,

Please print or type

| | | |
|---|---|---|
| Your first name and initial: Doyle V. | Last name: Mathia (deceased 2/19/00) | Your social security number: 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 |
| If a joint return, spouse's first name and initial: Jean | Last name: Mathia | Spouse's social security number: 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 |
| Home address (no. and street) or P.O. box if mail is not delivered to your home: P.O. Box 450417 | Apt. no. | Phone number: (918) 786-7849 |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions.: Grove, Oklahoma 74345-0417 | | For Paperwork Reduction Act Notice, see page 6. |

A If the name or address shown above is different from that shown on the original return, check here ▶ [X]

B Has the original return been changed or audited by the IRS or have you been notified that it will be? [X] Yes [ ] No

C Filing status. Be sure to complete this line. Note. You cannot change from joint to separate returns after the due date.

On original return ▶ [ ] Single [X] Married filing jointly [ ] Married filing separately [ ] Head of household [ ] Qualifying widow(er)

On this return ▶ [ ] Single [X] Married filing jointly [ ] Married filing separately [ ] Head of household* [ ] Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

| Use Part II on the back to explain any changes | | A. Original amount or as previously adjusted (see page 2) | B. Net change - amount of increase or (decrease) - explain in Part II | C. Correct amount |
|---|---|---|---|---|
| **Income and Deductions (see pages 2-6)** | | | | |
| 1 Adjusted gross income (see page 3) | 1 | 25,957 | | 25,957 |
| 2 Itemized deductions or standard deduction (see page 3) | 2 | 18,478 | | 18,478 |
| 3 Subtract line 2 from line 1 | 3 | 7,479 | | 7,479 |
| 4 Exemptions. If changing, fill in Parts I and II on the back | 4 | 5,000 | | 5,000 |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | 2,479 | | 2,479 |
| **Tax Liability** | | | | |
| 6 Tax (see page 4). Method used in col. C Tables | 6 | | | |
| 7 Credits (see page 4) | 7 | | | |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | | | |
| 9 Other taxes (see page 4) | 9 | 3,908 | -2,331 | 1,577 |
| 10 Total tax. Add lines 8 and 9 | 10 | 3,908 | -2,331 | 1,577 |
| **Payments** | | | | |
| 11 Federal income tax withheld and excess social security and tier 1 RRTA tax withheld. If changing, see page 4 | 11 | 2,400 | | 2,400 |
| 12 Estimated tax payments, including amount applied from prior year's return | 12 | | | |
| 13 Earned income credit (EIC) | 13 | | | |
| 14 Additional child tax credit from Form 8812 | 14 | | | |
| 15 Credits from Form 2439, Form 4136, or Form 8885 | 15 | | | |
| 16 Amount paid with request for extension of time to file (see page 4) | 16 | | | |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | 2,331 |
| 18 Total payments. Add lines 11 through 17 in column C | 18 | | | 4,731 |
| **Refund or Amount You Owe** | | | | |
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | | | 823 |
| 20 Subtract line 19 from line 18 (see page 5) | 20 | | | 3,908 |
| 21 Amount you owe. If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | | | |
| 22 If line 10, column C, is less than line 20, enter the difference | 22 | | | 2,331 |
| 23 Amount of line 22 you want refunded to you | 23 | | | 2,331 |
| 24 Amount of line 22 you want applied to your estimated tax | 24 | | | |

RECEIVED OCT. 29 2005 AUSTIN, TEXAS IRS-SC

Acknowledgement of Receipt Only

**Sign Here** Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

▶ Jean Mathia 10-05-05 Your signature Personal Representative Date ▶ Jean Mathia 10-05-05 Spouse's signature. If a joint return, both must sign. Date

**Paid Preparer's Use Only**

Preparer's signature ▶ Filing as Surviving Spouse | Date | Check if self-employed [ ] | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

Form 1040X (Rev. 11-2003)

JSA 3A0180 2.000

EXHIBIT F

**Part I** **Exemptions.** See Form 1040 or 1040A instructions.

If you are not changing your exemptions, do not complete this part.
If claiming more exemptions, complete lines 25-31.
If claiming fewer exemptions, complete lines 25-30.

| | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|
| 25 Yourself and spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . Caution. If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | 25 | | | |
| 26 Your dependent children who lived with you . . . . . . . . . . . . . . | 26 | | | |
| 27 Your dependent children who did not live with you due to divorce or separation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 | | | |
| 28 Other dependents . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 | | | |
| 29 Total number of exemptions. Add lines 25 through 28 . . . . . . . . . | 29 | | | |
| 30 Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2003 | $3,050 | $104,625 |
| 2002 | 3,000 | 103,000 |
| 2001 | 2,900 | 99,725 |
| 2000 | 2,800 | 96,700 |

31 Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name | Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

No. of your children on line 31 who:
- lived with you . . . . . . ▶ ☐
- did not live with you due to divorce or separation (see page 5) . . . . ▶ ☐

Dependents on line 31 not entered above . ▶ ☐

**Part II** **Explanation of Changes to Income, Deductions, and Credits**

Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here . . . . . . . . . . . . . ▶ ☐

See Statement attached hereto and made a part hereof by reference.

**Part III** **Presidential Election Campaign Fund.** Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here . . . . . . . . . . . . ▶ ☐

**Doyle V. Mathia (deceased 2/19/00)**
**& Jean Mathia**
**SSN: 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**
**Tax Year 1984**

## STATEMENT ATTACHED TO AND MADE A PART OF FORM 1040X, "AMENDED U.S. INDIVIDUAL INCOME TAX RETURN" FOR TAX YEAR 1984

### Part II (Relating to Line 6)

For reasons discussed below, the tax in the amount of $2,331 paid by the taxpayers on or about October 27, 2003, relating to tax year 1984, is an "overpayment" that is properly refundable to the taxpayers.

### Facts

This claim for tax refund is submitted on behalf of Doyle V. Mathia (deceased 2/19/2000) (SSN: 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) and Jean Mathia (SSN: 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) (collectively, the "Taxpayers") pursuant to Internal Revenue Code ("Code") §§ 6401(a) and 6402(a). Doyle V. Mathia, deceased, was a limited partner in Greenwich Associates, a New York limited partnership (the "Partnership") (FEIN 13-3141085). The Partnership was one of approximately 50 coal programs or partnerships sponsored by the Swanton Corporation, a Delaware corporation (collectively, the "Swanton Partnerships").

Jean Mathia is the surviving spouse of Doyle V. Mathia. Doyle and Jean Mathia's 1982, 1983 and 1984 joint income tax returns included items attributable to Mr. Mathia's Partnership interest.

The Partnership was subject to the Tax Equity & Fiscal Responsibility Act of 1982 ("TEFRA") provisions of Code §§ 6221-6233. The Partnership received a Notice of the Beginning of an Administrative Proceeding ("NBAP") on the following dates:

| Tax Year: | Date NBAP Received: |
|---|---|
| 1982 | Date unknown |
| 1983 | December 27, 1984 |
| 1984 | March 16, 1987 |

On June 11, 1985, the Partnership submitted a proposed settlement offer consistent with settlement guidelines proposed by the Internal Revenue Service (the "Service"). On July 8, 1985, Service personnel advised the Partnership of the suspension of settlement discussions due to conflicts in administration between the Service's Buffalo District and Kentucky District.

The Service issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for tax years 1982, 1983 and 1984 on August 3, 1990. On October 26, 1990, the Partnership filed a petition in Tax Court for readjustment of the FPAA in a case styled as *Greenwich Associates v. Commissioner*, Docket No. 024102-90, United States Tax Court.

**Doyle V. Mathia (deceased 2/19/00)**
**& Jean Mathia**
**SSN: 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**
**Tax Year 1984**

The Service made at least two settlement offers in the case. The Service communicated a settlement offer to the Swanton Partnerships in or around November, 1990. See September 19, 1991 letter from Counsel for Greenwich Associates to All Members of the Swanton Partnerships' Tax Defense Fund (the "September 19, 1991 Letter") (copy attached as Exhibit A). This offer was not accepted by any of the Swanton Partnerships. The Service made at least one other offer, in September, 1991 (the "September 1991 Offer"), that was "essentially unchanged" from the earlier offer. See September 19, 1991 Letter, Exhibit A.

In the September 19, 1991 Letter, Counsel for Greenwich Associates recommended that all Swanton Partnerships accept the September 1991 Offer. By November, 1991, 19 of the 20 Swanton Partnerships, including Greenwich Associates, had accepted the September 1991 Offer. See November 8, 1991 letter from Counsel for Greenwich Associates to All Contributors to the Swanton Partnerships' Tax Defense Fund (copy attached as Exhibit B). The parties may have continued to work out the details of the settlement agreement until sometime in 1993.

On July 3, 1995, the Service provided documents to procedurally dismiss the Tax Court case to counsel for the Partnership. These documents included a document titled "STIPULATION OF SETTLEMENT BETWEEN THE TMP & RESPONDENT", which restated the terms of the agreement. The Partnership executed the documents and submitted them to the Internal Revenue Service District Counsel's office on July 17, 1996. Due to an error on the part of the Service, a revised "STIPULATION OF SETTLEMENT BETWEEN THE TMP & RESPONDENT" was issued by the Service on July 31, 1996 and again on September 6, 1996 (the "Stipulation of Settlement").

Upon receipt of the revised Stipulation of Settlement from the Service on September 6, 1996, the representative for the Partnership signed the Stipulation of Settlement and returned it to the Service on September 25, 1996. The Service countersigned the Stipulation of Settlement on August 30, 2001, almost 5 years later. The Stipulation of Settlement was filed with, and entered by, the Tax Court on August 31, 2001 (copy attached as Exhibit C).

The Service mailed a computational adjustment for tax year 1984 to the Taxpayers on January 8, 2003. A copy of the computational adjustment for tax year 1984 is attached hereto as Exhibit D. According to the Service's transcript for the Taxpayers, the Service assessed the tax in the amount of $2,331 on January 27, 2003.

On or about October 27, 2003, the Taxpayers paid all of the tax attributable to disallowed Partnership items reflected in the Taxpayers' 1982, 1983 and 1984 income tax returns as follows:

| Tax Year | Amount |
|---|---|
| 1982 | $149,360 |
| 1983 | 4,015 |
| 1984 | 2,331 |
| | $155,706 |



1603713_1.DOC

**Statute of Limitations**

Code § 6229(f) provides that, if an item becomes a non-partnership item by reason of Code § 6231(b), then the period for assessing any tax shall not expire before the date which is one year after the date on which the item became a non-partnership item. Code § 6231(b)(1)(C) provides that a partnership item becomes a non-partnership item as of the date the Secretary or the Attorney General enters into a settlement agreement with the partner with respect to such item.

As discussed above, an agreement was reached between the Greenwich Associates tax matters partner and the Service no later than November 1991 (the "1991 Settlement Agreement"). This agreement was a "settlement agreement" under Code § 6231(b)(1)(C), and, pursuant to Code § 6231(b)(1), no later than November 1991, the date the 1991 Settlement Agreement was reached, all Partnership items became non-partnership items. Accordingly, the Service had one year to assess the partners of the Partnership for the tax. The Service did not assess the tax until January 2003. This assessment was an assessment made out of time under Code § 6229(f).

Alternatively, even if the parties continued to work out the details of the 1991 Settlement Agreement until sometime in 1993, the settlement agreement would be considered final no later than 1993, and the assessment would still be untimely.

Alternatively, even if the 1991 Settlement Agreement is disregarded, on September 25, 1996, the TMP signed the Stipulation of Settlement and mailed it to the Service. On August 30, 2001, the Service signed this same Stipulation of Settlement, which was then filed with and entered by the Tax Court on August 31, 2001 (the "2001 Stipulation of Settlement Agreement").

The 2001 Stipulation of Settlement Agreement was also a "settlement agreement" under Code § 6231(b)(1)(C), and, pursuant to Code § 6231(b)(1), on August 30, 2001, the date the 2001 Stipulation of Settlement Agreement was signed, all Partnership items became non-partnership items. Accordingly, pursuant to Code § 6229(f), the statute of limitations for assessment would have expired one year from August 30, 2001, on August 30, 2002.

The Service did not assess the tax until January 2003. The period for assessing tax under Code § 6501, and any other provision of the Code, had also expired by this time. Therefore, under any view discussed above, the assessment was clearly an assessment made out of time.

Code § 6402 provides that, in the case of any "overpayment", the Secretary within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of a tax on the part of the person who made the overpayment and shall refund any balance to such person. Code § 6401(a) provides that the term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation.

**Doyle V. Mathia (deceased 2/19/00)**
**& Jean Mathia**
**SSN: 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**
**Tax Year 1984**

**Conclusion**

The tax in the amount of $2,331 paid by the Taxpayers on or about October 27, 2003, relating to tax year 1984, is an "overpayment" that is properly refundable to the Taxpayers.

ZAPRUDER & ODELL
ATTORNEYS AT LAW
THE HOMER BUILDING
SUITE 800 SOUTH
601 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
TEL: (202) 508-9600 FAX: (202) 508-9601

September 19, 1991

ATTORNEY-CLIENT PRIVILEGED

To All Members of the Swanton Partnerships
Tax Defense Fund

Dear Clients:

We are writing to advise you that it is our view that you should accept the Government's settlement offer which was communicated to us this week. As you know, the trial of the 1982-84 partnerships is scheduled to commence on October 21, 1991 in Washington, making the timeframe for a decision on the offer quite short. In fact, the deadline for responding to your general partner is September 28, 1991.

The Government's offer is essentially unchanged from the offer made ten months ago. For each partnership other than Lincoln, the I.R.S. will allow a deduction equal to one-half of the amount of the cash investment. The negligence and substantial understatement penalties will be conceded by the I.R.S., but interest at the penalty rate will be applied. All additional deductions will be disallowed. The Lincoln offer is the same except that Lincoln partners will be entitled to a deduction equal to 85% of their cash invested. To the extent a partnership reported income, either from operations or as a result of the cancellation of partnership notes, that income will be reversed and a credit allowed for those amounts, to be used to offset deficiencies, if a timely claim for refund was filed. We believe that this is the Government's last offer and that refusal will result in a trial of the case.

We have done rough calculations of the approximate savings this offer would provide to a typical one-unit partner for each of the three years, based on his having claimed a write-off equal to 3.2 times his cash investment for 1982 and 1983 partners or a write-off equal to 2 times

EXHIBIT A

ZAPRUDER & ODELL



his cash investment for a 1984 partner. We assumed such a sample partner was in the highest marginal bracket for each year. For a 1982 partner, the offer would reduce the total amount due in the event of a loss from approximately $220,000 to approximately $102,000. For a 1983 partner, the amount due would be reduced from approximately $187,000 to approximately $84,000. For a 1984 partner, the amount due would be reduced from approximately $54,000 to about $25,500. We caution you that these estimates are very rough and general, and suggest that you ask your accountant to advise you of the specific effect the offer would have on you. In all events however, the offer appears to reduce the amount you would owe in the event of a total loss by more than 50%.

We believe that all partners should accept this offer. We have carefully evaluated the Empire offering, which serves as a test case. We have concluded that the chance of that partnership's prevailing is remote. That assessment is based on our review of our experts' report (which became available last month) and that of the government (which we received on September 4), as well as all of the other material we have assembled over the last year. We have concluded that on each of the three key issues -- the reasonableness of the mine development costs deducted, the economic substance of the deal as structured, and the profit motive which drove the investment -- we are unlikely to be able to persuade the Court to find in your favor. We also think that, because of the relative weakness of your position and certain unfavorable precedents, it is likely that the negligence penalty and substantial understatement penalty will each be upheld.

At first blush, Lincoln appears to be a much stronger case. In fact, the higher quality reserve study, when coupled with the partnership's relative success, has led us to conclude that Lincoln has a reasonable prospect of prevailing on profit motive and economic substance grounds. However, we have learned from a number of witnesses that the Lincoln partnership acquired a property with a recently operated mine that required minimal additional development costs. Our experts' estimates of the development costs

ZAPRUDER & ODELL



required to start the mine from scratch are only about one-half of those claimed, and would be reduced to much less if the pre-existing mine's development were taken into account. Further, the actual mine development costs incurred, from initiation of the partnership until it was determined that its property had been "mined-out," are less than the amount offered by the I.R.S. as a deduction pursuant to the settlement offer. In addition, another partnership shared the property with Lincoln and would have borne some of those costs. Consequently, even if we prevail on profit motive and economic substance, the up-front deduction attributable to mine development costs would be less than what the offer allows. Hence, we believe that the offer should be accepted for Lincoln as well.

In our view, partners in partnerships other than Lincoln and Empire should also accept the offer. The I.R.S. has taken the position that Lincoln is unique and that all the other partnerships are like Empire. Despite continuing efforts by us, we have been unable to convince the I.R.S. to change that view, and our efforts to enlist the Court's assistance have been unavailing. Hence, should Empire lose, regardless of what happens to Lincoln, it is very likely that each other partnership will have to appear in Court to prove its merits or find itself bound by the adverse decision in Empire. While we know less about those partnerships than we do about Lincoln and Empire (since we have been preparing the latter for trial) our review of the material we do have suggests strongly that they would be unlikely to prevail in that effort.

We recognize that this view of the case is bleaker than that expressed in our evaluation of this offer ten months ago. In that evaluation, we expressed our belief that Lincoln was entitled to a better offer, based on facts then known to us, while Empire might be able to negotiate a better deal. That evaluation made accepting the offer premature at that time. Unfortunately, the factual developments regarding Lincoln since that time have been unfavorable. Further, despite continual efforts by us to obtain a better offer for Empire, we have been unsuccessful, making it no longer premature to accept the outstanding offer.

ZAPRUDER & ODELL



Given our assessment of the remote possibility of success at trial and the substantial savings provided by the offer, we reiterate that it is our advice that all partners communicate their acceptance of this offer to their general partners at once.

Sincerely,

Henry G. Zapruder

Matthew D. Lerner

ZAPRUDER & ODELL
ATTORNEYS AT LAW
THE HOMER BUILDING
SUITE 800 SOUTH
601 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
TEL: (202) 508-9600 · FAX: (202) 508-9601

November 8, 1991

To All Contributors to the Swanton Partnerships' Tax Defense Fund

Dear Clients:

The settlement offer which we communicated to you in our letter dated September 19, 1991 was accepted by 19 of the 20 partnerships formed between 1982 and 1984. California Coal Associates rejected the offer. However, the I.R.S. abandoned its original all-or-nothing requirement and settled with the 19 other partnerships. Hence, your cases have been settled.

The next step involves the preparation and execution of decision documents and closing agreements memorializing the terms of the settlement. The I.R.S. insists upon doing the initial drafting of those documents and assures us that it will be completed expeditiously. We will exert all of the pressure that we can to obtain those documents as soon as possible. We expect these will be available within sixty days, although our experience suggests that receipt of such documents may frequently take longer. Further, as yet, the I.R.S. has not committed to having them prepared by any particular time.

We would like to take this opportunity to urge each of you to meet with your personal tax advisor and determine whether it is in your interest to pay the tax and interest now that will otherwise be assessed when the decision documents are finalized. Interest will continue to run until you make such a payment. Your advisor should now be able to calculate how much you will owe reasonably accurately, and making a payment in that amount will stop the running of additional interest against you. Internal Revenue Announcement 86-114, 1986-47 I.R.B. 46, which your advisor should have a copy of, explains how you can make such a payment.

We are still waiting for the I.R.S. to resolve certain remaining technical issues, such as whether those of you who paid your cash contribution to a partnership in two separate

EXHIBIT B

ZAPRUDER & ODELL

Contributors to the Swanton Partnerships'
Tax Defense Fund
November 8, 1991
Page 2

years can deduct half of your total cash in the first year or must deduct half of each year's contribution in the year it was made. The I.R.S. is also considering whether a deduction of one-half of your note settlement payments will be allowed in the year of investment or the year they were paid. Of course, as soon as we receive answers to these questions, we will be in touch with you again.

Sincerely,

Henry G. Zapruder

Matthew D. Lerner

assigned STJ Pow 'l 9/10/01 Wash., (Spec.)

ORIGINAL

UNITED STATES TAX COURT

UNITED STATES TAX COURT
FILED
AUG 31 2001
AS STIPULATION OF SETTLEMENT
BETWEEN THE TMP & RESPONDENT

GREENWICH ASSOCIATES,
KEVIN SMITH, TAX MATTERS PARTNER,

Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent.

Docket No. 24102-90
DL - SWANTON
Judge Powell

Powell

## DECISION

Pursuant to Rule 248(a) of the Tax Court Rules of Practice and Procedure, it is

ORDERED AND DECIDED: That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1982:

| Partnership Item | 1982 As Reported | As Determined |
|---|---|---|
| Mining Development Expenses | $ 4,200,000.00 | $ 707,000.00 |
| Interest Expense | 26,458.00 | -0- |
| Legal and Accounting | 19,508.00 | -0- |
| Amortization | 250.00 | -0- |
| General Partner Fee | 14,000.00 | -0- |
| Net Earnings from Self-Employment | (42,602.00) | -0- |

That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1983:

| Partnership Item | | 1983 As Reported | As Determined |
|---|---|---|---|
| Total Income | | $ 1,245.00 | $ -0- |
| Total Deductions | | 269,443.00 | -0- |
| Interest Expense | 261,000.00 | | |
| Legal and Accounting | 5,443.00 | | |
| Amortization | 3,000.00 | | |

EXHIBIT C

Docket No. 24102-90

| | | |
|---|---|---|
| Life Insurance | $ 950.00 | -0- |
| Net Earnings from Self-Employment | (2,695.00) | -0- |
| Tax Preference Item | | |
| Net Investment Income | $ (261,802.00) | $ -0- |
| Investment Item | | |
| Net Investment Income | 1,228.00 | -0- |

That the following statement shows the adjustments to the partnership items of Greenwich Associates for the taxable year 1984:

| Partnership Item | | 1984 As Reported | As Determined |
|---|---|---|---|
| Total Income | | $ 141,931.00 | $ 129,197.00 |
| Total Deductions | | 352,858.00 | -0- |
| Interest Expense | 261,000.00 | | |
| Mine Development Expenses | 79,197.00 | | |
| Production Royalty | 7,419.00 | | |
| Legal and Accounting | 1,500.00 | | |
| Amortization | 3,000.00 | | |
| Guaranteed Payment to Partners | 742.00 | | |
| Net Earnings from Self-Employment | | (1,377.00) | -0- |
| Gross Non-Farm Income | | 1,410.00 | -0- |
| Tax Preference Item | | | |
| Qualified Investment Income | | $ 140,521.00 | $ -0- |
| Qualified Investment Expenses | | 349,330.00 | -0- |

Docket No. 24102-90

Investment Interest

| | | |
|---|---|---|
| Investment Income | $ 972.00 | $ -0- |

Judge.

Entered:

* * * * *

It is hereby stipulated that the Court may enter the foregoing decision in the above-entitled case.

It is further stipulated that the undersigned Tax Matters Partner of Greenwich Associates, for the taxable years 1982, 1983, and 1984, by executing this stipulation, consents to the entry of the foregoing decision in this case and certifies that no party objects.

9/11/96

KEVIN SMITH
Tax Matters Partner

DAVID L. JORDAN
Acting Chief Counsel
Internal Revenue Service

By:

ROBERT B. MARINO
Assistant District Counsel
Tax Court No. MR0148
7 World Trade Center
24th Floor
New York, New York 10048

MATTHEW D. LERNER
Counsel for Petitioner
Tax Court No. LM0393
Zapruder & Odell
Suite 800 South
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 508-9663

Date: 9/25/96

Date: AUG 30 2001

Department of the Treasury
1973 North Rulon White Blvd.
Ogden, UT 84201

**Person to Contact:**
Ms. Waldi
**Employee Number:** 0478607058
**Telephone Number:**
1-866-899-9083
**Extension:** 8659
**Hours:** 6 a.m. to 3 p.m.
Mountain Time
Tuesday - Friday
**Taxpayer Identification Number:**
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
**Tax Year(s):** 1982 & 1984
**Partnership/S Corporation:**
Greenwich Associates
**Employer Identification Number:**
13-3141085

Date: January 8, 2003

JEAN MATHIA
PO BOX 450417
GROVE OK 74345-0417

Dear Ms. Mathia:

Enclosed is Form 4549A-CG explaining how the adjustments made during our examination of the above partnership affect your individual income tax return(s). This form is for your records.

If you owe additional tax and/or penalties, we will send a billing notice including interest. The interest computation shown on the enclosed report is an estimate. It does not reflect any credits or payments. When the additional tax has been added to your account, you will receive a correct billing. You may want to pay the amount shown on our report, as interest will continue to accrue on any unpaid balance. If you are due a refund, it will be sent to you.

According to the settlement agreement, Internal Revenue Code Section 6621(c), interest at 120 percent of the normal rate applies to the partnership adjustment.

A copy of this letter has been forwarded to your authorized representative.

If you have any questions about this matter, please contact the person whose name, telephone number, and contact hours are shown above.

EXHIBIT D

be reached and a copy of this letter.

Thank you for your cooperation.

Sincerely,

Ms. Waldron

Tax Technician
Exam Field Support

Enclosure(s):
Form 4549A-CG
Publication 594

| Name and Address of Taxpayer | SS or EI Number: | | Return Form No. |
|---|---|---|---|
| DOYLE & JEAN MATHIA<br>PO BOX 450417<br>GROVE OK 74345-0417 | 5_ _4-2832 | | 1040 |
| | Person with whom examination changes were discussed | Name and Title | |

| 1. Adjustments to Income | Period End 12/31/1982 | Period End 12/31/1984 | Period End |
|---|---|---|---|
| A. ITEMIZED DEDUCTIONS | $ | $ 548.00 | $ |
| B. ORD. INC. GREENWICH ASSOC | | 10,961.00 | |
| C. ORD. LOSS GREENWICH ASSOC | 301,445.00 | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. | | | |
| I. | | | |
| J. | | | |
| K. | | | |
| L. | | | |
| M. | | | |
| N. | | | |
| O. | | | |
| P. | | | |
| Q. | | | |
| R. | | | |
| S. | | | |
| 2. Total Adjustments | 301,445.00 | 11,509.00 | |
| 3. Taxable Income Per Return or as Previously Adjusted | 75,243.00 | (9,030.00) | |
| 4. Corrected Taxable Income | 376,688.00 | 2,479.00 | |
| Tax Method | TAX RATE | TAX TABLE | |
| Filing Status | JOINT | JOINT | |
| 5. Tax | 175,793.00 | 0.00 | |
| 6. Additional Taxes | | | |
| 7. Corrected Tax Liability | 175,793.00 | 0.00 | |
| 8. Less Credits A. INVESTMENT TAX CREDIT | 25,157.00 | | |
| B. | | | |
| C. | | | |
| D. | | | |
| 9. Balance (Line 7 less total of lines 8A through 8D) | 150,636.00 | 0.00 | |
| 10. Plus Other Taxes A. ALTERNATIVE MINIMUM TAX | | 2,752.00 | |
| B. ITC RECAPTURE | | 1,156.00 | |
| C. | | | |
| D. | | | |
| 11. Total Corrected Tax Liability (Line 9 + lines 10A to 10D) | 150,636.00 | 3,908.00 | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 1,276.00 | 1,577.00 | |
| 13. Adjustments to A. Special Fuels Credit | | | |
| B. | | | |
| 14. Deficiency - Increase in Tax or (Overassessment - Decrease in tax) (Line 11 less Line 12 adjusted by Line 13) | 149,360.00 | 2,331.00 | |
| 15. Adjustments to Prepayment Credits | | | |
| 16. Balance Due or Overpayment (Line 14 Adjusted by Line 15) (Excluding Interest and penalties) | $ 149,360.00 | $ 2,331.00 | $ |

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the State form.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 31 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid.

Income Tax Examination Changes

| Name of Taxpayer: DOYLE & JEAN MATHIA | SS or EI Number: 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 | Return Form No. 1040 |
|---|---|---|

| 17. Penalties | Period End 12/31/1982 | Period End 12/31/1984 | Period End |
|---|---|---|---|
| A. | $ | $ | $ |
| B. | | | |
| C. | | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. | | | |
| I. | | | |
| J. | | | |
| K. | | | |
| L. | | | |
| M. | | | |
| N. | | | |
| 18. Total Penalties | | | |
| 19. Underpayment attributable to negligence: (1981 - 1987) An Addition to the tax of 50 percent of the interest due on this underpayment will accrue until paid or assessed. | | | |
| 20. Underpayment attributable to fraud: (1982 - 1987) An addition to the tax of 50 percent of the interest due on this underpayment will accrue until paid or assessed. | | | |
| 21. Underpayment attributable to Tax Motivated Transactions: TMT Interest will accrue and be assessed at 120 percent of the underpayment rate in accordance with IRC 6621(c). | 149,360.00 | 2,331.00 | |
| Summary of Taxes, Penalties and Interest: | | | |
| A. Balance due or Overpayment of Taxes (line 16, page 1) | 149,360.00 | 2,331.00 | |
| B. Penalties (line 18, page 2) (computed to 02/02/2003) | | | |
| C. Interest (IRC 6601) (computed to 02/02/2003) | 777,591.45 | 9,092.99 | |
| D. TMT Interest (computed to 02/02/2003 on TMT underpay) | 356,377.64 | 4,274.35 | |
| E. Amount due or refund (sum of lines A. B. C. and D.) | 1,283,329.09 | 15,698.34 | |

Other Information:

Greenwich Associates 13-3141085

| Examiner's Signature | District | Date |
|---|---|---|
| Ms. Waldron | Ogden Service Center | 01/08/2003 |

| FORM 886-A | EXPLANATION OF ITEMS | SCHEDULE/EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>DOYLE & JEAN MATHIA | 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 | YEAR/PERIOD ENDED<br>198212 |

STANDARD PARAGRAPHS:

| | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| ORD. LOSS GREENWICH ASSOC | (361,436.00) | (59,991.00) | 301,445.00 |

We have adjusted your return in accordance with the examination results for the identified Partnership / S Corporation. The examination results are based on the provisions stipulated in the United States Tax Court decision regarding the Partnership / S Corporation return.

Identification Number: 5_ -24-2832 TOTAL 5.00.00

198212 FORM 6251 - ALTERNATIVE MINIMUM TAX COMPUTATION

| | | |
|---|---|---|
| 1. Adjusted Gross Income | | 399,847.00 |
| 2. Excess Itemized deductions or | 18,159.00 | |
| 2a. Non-itemizing Charitable Contributions | 0.00 | |
| 3. Zero Bracket Amount | 3,400.00 | |
| 4. Exemptions | 5,000.00 | |
| 5. Add lines 2, 3 and 4 | | 26,559.00 |
| 6. Subtract line 5 from line 1 | | 373,288.00 |
| 7. Tax Preference Items | | 3,829.00 |
| 8. Line 6 plus line 7 - Alternative Minimum Taxable Income | | 377,117.00 |
| 9. $20,000 ($10,000 of married filing separately, or an estate or trust) | | 20,000.00 |
| 10. Subtract line 9 from line 8 | | 357,117.00 |
| 11. Smaller of line 10 or $40,000 | 40,000.00 | |
| 12. Line 10 less line 11 | 317,117.00 | |
| 13. 10% of line 11 | 4,000.00 | |
| 14. 20% of line 12 | 63,423.00 | |
| 15. Add line 13 and 14 | | 67,423.00 |
| 16. Tax from 1040 line 50 | 150,636.00 | |
| 17. Minimum Tax | 0.00 | |
| 18. Tax from Recapture of ITC | 0.00 | |
| 19. Total lines 16,17 and 18 | | 150,636.00 |
| 20. Subtract line 19 from line 15 | | 0.00 |
| 21. Foreign Tax Credit | | 0.00 |
| 22. Line 20 less line 21 | | 7,117.00 |
| 23. Credits allowed against Alternative Minimum Tax | | 5,858.00 |
| 24. Line 22 less line 23 - ALTERNATIVE MINIMUM TAX | | 0.00 |

198212 - EXPLANATION OF INTEREST ON TAX MOTIVATED TRANSACTION

It is determined that part of the underpayment of tax is attributable to tax motivated transactions as defined under Section 6621(c) of the Internal Revenue Code. Consequently, the annual rate of interest accruing after December 31, 1984 will be a percentage of the adjusted rate established under Section 6621(c) on any substantial underpayment attributable to tax motivated transactions. Interest applying to the amount on line 5 below will be computed and assessed at the applicable percentage.

| | | |
|---|---|---|
| 1. | Total corrected tax liability, Form 4549, line 11 | 150,636.00 |
| 2. | Total corrected tax liability without regard to tax motivated transactions | 1,276.00 |
| 3. | Line 1 less line 2 - underpayment attributable to tax motivated transactions (0 if under $1,000) | 149,360.00 |
| 4. | Tax Deficiency, Form 4549, line 13 | 149,360.00 |
| 5. | Lesser of line 3 or line 4 - amount to which Section 6621(a) applies | 149,360.00 |

ADJUSTMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS:

| | |
|---|---|
| ORD. LOSS GREENWICH ASSOC | 301,445.00 |